UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THURSTON COUNTY BOARD OF EQUALIZATION, et al., <br><br> Defendants. | CASE NO. C08-5562BHS <br><br> ORDER DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION |

This matter comes before the Court on Plaintiffs' Motion for a Preliminary Injunction (Dkt. 2). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file, heard oral argument of counsel, and hereby denies the motion for the reasons stated herein.

## I. PROCEDURAL BACKGROUND

On September 18, 2008, Plaintiffs Confederated Tribes of the Chehalis Reservation ("Tribe") and CTGW, LLC, filed a complaint against Defendants Thurston County Board of Equalization; equalization board members John Morrison, Bruce Reeves and Joe Simmonds; Thurston County Assessor Patricia Costell; and Thurston County. Dkt. 1. Plaintiffs allege that Defendants are violating the U.S. Constitution as well as federal common law by imposing a personalty tax on Plaintiffs' facility, the Great Wolf Lodge. *Id.* ¶ 1.

ORDER - 1

Plaintiffs also filed a Motion for Preliminary Injunction. Dkt. 2. Plaintiffs request that the Court issue an injunction to "enjoin Defendants from: (1) seeking to collect, collecting, or enforcing the collection of the personalty tax against Plaintiffs; and (2) proceeding to further litigate the case of *CTGW, LLC v. Patricia Costello, Thurston County Assessor*, No. 07-1110." *Id*. at 22. On September 29, 2008, Defendant Thurston County Assessor responded. Dkt. 13. On October 3, 2008, Plaintiffs replied. Dkt. 18. On October 16, 2008, the Court held a hearing on the preliminary injunction motion and heard oral arguments from counsel. Dkt. 21.

## II. FACTUAL BACKGROUND

### A. The Lodge

The Tribe occupies a reservation at the confluence of the Black and Chehalis Rivers in Southwest Washington ("Reservation"). *Confederated Tribes of the Chehalis Indian Reservation v. State of Washington*, 96 F.3d 334, 338 (9th Cir. 1996). The Reservation, which was created by Secretarial Order in 1864, was set aside for "the use and occupation of the Chehalis Indians." 1 Kappler, *Indian Affairs, Laws and Treaties* 901-04 (2d ed. 1904). The Tribe has approximately 800 members, which include persons descended from the Upper Chehalis, the Lower Chehalis, Cowlitz, Satsop, Qualioqua and other aboriginal tribes of Southwest Washington. Dkt. 3, Declaration of Chairman Burnett, ¶ 5 ("Burnett Decl."). The Reservation has a land area of approximately 4,200 acres (about 7.022 square miles) in southeastern Grays Harbor and southwestern Thurston Counties. *Id*.

Approximately five years ago, the Tribe purchased 43 acres near the I-5 freeway, Exit 88, Highway 12, in Grand Mound, WA. Burnett Decl, ¶ 7. That property was subsequently converted to non-contiguous federal trust property and is currently held in trust by the United States for the benefit of the Tribe. *Id*.; *see also id*., Exh. B at 2.

In 2005, the Tribe and Great Wolf Resorts Inc., a non-Indian corporation with water park expertise, formed a limited liability company, CTGW,

LLC, under Delaware law, for the purpose of building and owning Great Wolf Lodge Grand Mound ("Lodge"). *Id.* ¶ 8. The Lodge is located on 39 of the 43 acres that are held in trust for the Tribe and consists of a hotel, conference center, indoor water park and other improvements ("Improvements"). *Id.* ¶ 9. The Tribe leases the property to CTGW. *Id.*, Exh A., U.S. Dept. of the Interior Business Development Lease (recorded by the Bureau of Indian Affairs on July 2, 2007) ("Lease"). Under the CTGW LLC operating agreement, the Tribe has a majority "proportionate share" of CTGW's profits of 51%, and Great Wolf receives the remaining 49% of CTGW's profits. Burnett Decl. ¶ 11. Plaintiffs claim that "[u]nder this unique structure, the Tribe is both the owner-lessor of the property and the majority-interest owner of the lessee." Complaint, ¶ 22.

**B.      State Taxation**

In Washington, "personal property," for purposes of taxation, includes "all improvements upon lands the fee of which is still vested in the United States." RCW 84.04.080. A county may enforce such taxes by placing liens on the assessed improvements and then selling them at a tax sale. RCW 84.60.020.

Plaintiffs claim that "[i]n 2007, the Thurston County Assessor determined the value of the Improvements for taxation in 2008 as partially completed." Complaint, ¶ 32. Plaintiffs allege that the assessor "then reduced that value by the Tribe's 51% ownership interest in CTGW, to a 2007 taxable value of $10,115,462, and then assessed CTGW a personal property tax based on the 49% interest of Great Wolf in CTGW." *Id*. At oral argument, counsel agreed that the 2007 assessed taxes were approximately $90,000. Plaintiffs also allege that the assessor has "stated her intent to assess the Improvements at full completion at their full value in 2008 for 2009." *Id*.

Plaintiffs claim that "[s]olely to preserve its rights, the Tribe timely appealed the County's tax to the Thurston County Board of Equalization, which is an administrative board." *Id*. ¶ 35 (citing *CTGW, LLC v. Patricia Costello, Thurston County Assessor*, No.

07-1110). The Tribe, however, is not a party in that action and its only involvement in that action seems to be as a member of the limited liability company CTGW.

## III. DISCUSSION

**A.   Jurisdiction**

As a threshold matter, the Court recognizes that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Plaintiffs have presented questions to the Court in the areas of jurisdiction and abstention that are far from clear. For the purposes of the instant motion only, the Court finds that it has jurisdiction over this action. The parties should be aware that the Court may reconsider its assertion of subject-matter jurisdiction as the case progresses and the record is more fully developed.

In their complaint, Plaintiffs claim that the Court "has jurisdiction over this action pursuant to 28 U.S.C §§ 1331, 1362 and 1367." Complaint, ¶ 2. The Confederated Tribes of the Chehalis Reservation is a federally recognized Indian Entity. 73 F.R. 18554. In its complaint, the Tribe and CTGW seek a permanent injunction that would "enjoin Defendants from seeking to collect, collecting or enforcing the collection of the personalty tax against Plaintiffs." Complaint at 10. Plaintiffs allege that Defendants attempt to impose a tax against them which violates the "U.S. Constitution and laws of the United States, including the Supremacy Clause of Article VI, § 2, and federal common law." Complaint, ¶ 2. Under these facts and allegations, the Court has jurisdiction over the Tribes' causes of action under both 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1362 (Indian Tribes). The Court assumes jurisdiction over CTGW's causes of action under 28 U.S.C. § 1367 as they form part of the same case or controversy which involve the joinder of the additional party. *See* 28 U.S.C. § 1367(a).

Defendants argue that (1) the Court should abstain from asserting jurisdiction over this action because Plaintiffs have available state remedies in which to raise their federal

claims; and/or (2) the Court is divested of jurisdiction pursuant to the Tax Injunction Act, 28 U.S.C. § 1341. Dkt. 13 at 2-3.

**1.     Abstention**

Defendants contend that the *Younger* abstention doctrine applies as a bar to this Court's federal intervention in the state proceeding of *CTGW, LLC v. Patricia Costello*, Thurston County Assessor, No. 07-1110. *See Younger v. Harris*, 401 U.S. 37 (1971). Under the *Younger* abstention doctrine, a federal court should abstain from hearing a case if the following three criteria are met: (1) state judicial proceedings are ongoing; (2) the state proceedings implicate an important state interest; and (3) the state proceedings offer an adequate opportunity to litigate federal constitutional issues. *Ft. Belknap Indian Community v. Mazurek*, 43 F.3d 428, 431 (9th Cir. 1994), *cert. denied*, 516 U.S. 806 (1995). Abstention, however, is the rare exception to a district court's "virtually unflagging obligation" to exercise jurisdiction. *Id.* at 431.

Defendants argue that Plaintiffs have two available state remedies: (1) they may request a tax exemption under RCW 84.48.010; and (2) they may make a "payment under protest" and then bring a state court action to recover the allegedly unlawful tax pursuant to RCW 8.68.020. Dkt. 13 at 2-3. Defendants' argument is unavailing because the current state proceeding neither involves all of the Plaintiffs in this action nor provides the relief that Plaintiffs are seeking in this action. The Tribe has a right to federal court jurisdiction, *see supra*, and that right should not be denied on the basis that the other Plaintiff, CTGW, is seeking relief from a county legislative authority. Moreover, although functionally equivalent, a state tax exemption is not federal immunity from state taxation. Therefore, the Court will not, for the purposes of this motion only, abstain from exerting jurisdiction over this action based on the *Younger* abstention doctrine.

**2.     Tax Injunction Act**

"The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be

had in the courts of such State." 28 U.S.C. § 1341 ("Tax Injunction Act"). The Supreme Court, however, has held that the Tax Injunction Act does not bar the district court's jurisdiction over a suit under 28 U.S.C. § 1362. *Moe v. Confed. Salish & Kootenai Tribes*, 425 U.S. 463, 474-75 (1976). The Ninth Circuit has held that the exception to the Tax Injunction Act under § 1362 does not apply to either private Indian-owned entities, *Amarok Corp. v. Nevada, Dep't of Taxation*, 935 F.2d 1068, 1070-1071 (9th Cir. 1991), or to semi-autonomous tribal entities. *Navajo Tribal Utility Authority v. Arizona Dept. of Revenue*, 608 F.2d 1228, 1231 (9th Cir. 1979) (plaintiff was a "subordinate economic enterprise" of the Navajo Tribe).

In this case, Plaintiffs present a unique situation in that one Plaintiff is an recognized tribe whereas the other is a corporation that is partially owned by a recognized tribe and partially owned by a private corporation. It remains unclear how a district court should apply the Tax Injunction Act and the § 1362 exception to the Act over this particular joinder of parties. For example, in *Navajo*, the Ninth Circuit rejected the argument that "since [the plaintiff was] ultimately controlled by and closely related to the Tribe itself, it should be treated as a tribe for jurisdictional purposes." *Navajo*, 608 F.2d at 1232. The court stated that "[t]o the extent that [the semi-autonomous tribal entity's] interests are identified with the Tribe's, the Tribe itself will be able to protect those interests, should Its leadership decide to do so."

In this case, the Tribe's leadership has decided to protect its interest. While the Ninth Circuit did not hold that a tribe's involvement *would* confer jurisdiction over a tribe's and a corporation's claims, the Tribe's involvement in this action is a significant factor in favor of the Court asserting jurisdiction over Plaintiffs' claims. Moreover, the Court is unaware of any binding or persuasive authority holding that Plaintiffs, as joined, are barred by the Tax Injunction Act from pursuing their claims in this Court. Therefore, the Court finds that Plaintiffs meet the § 1362 exception to the Tax Injunction Act and the Court has subject-matter jurisdiction over this action.

**B.     Preliminary Injunction**

The basic function of injunctive relief is to preserve the status quo pending a determination of the action on the merits. *Los Angeles Memorial Coliseum Com'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980). Under the traditional standard, a preliminary injunction will issue if "(1) the moving party will suffer irreparable injury if the relief is denied; (2) the moving party will probably prevail on the merits; (3) the balance of potential harm favors the moving party; and (4) the public interest favors granting relief." *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987). Alternatively, a preliminary junction will issue where the moving party demonstrates either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions going to the merits are raised and the balance of hardships tips sharply in the moving party's favor. *Id.* These alternatives represent extremes on a single continuum rather than two distinct tests. *Clear Channel Outdoor Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003).

Plaintiffs argue that "the *Tribe* satisfies both the 'serious questions are raised' and 'the likelihood of success on the merits' alternative tests for a preliminary injunction." Dkt. 2 at 11 (emphasis added)[1]. The Court, however, need not reach the merits of this action as Plaintiffs have failed to show either that they will suffer "irreparable injury" or that "the balance of hardships tips sharply" in their favor.

**1.     Irreparable Injury**

Plaintiffs argue that they will suffer irreparable injury in the form of interference with the Tribe's sovereignty and self governance. Dkt. 2 at 20-21. Plaintiffs cite two Tenth Circuit cases in support of that proposition: *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234 (10th Cir. 2001), and *Seneca-Cayuga Tribe of Oklahoma v. Oklahoma*, 874 F.2d 709, 716 (10th Cir. 1989). In *Pierce*, the Potawatomi Indians

---

[1] Plaintiffs consistently alternate between the Tribe's interests, the Tribe's 49% interest in CTGW, and CTGW's interests as a corporate entity.

enacted their own vehicle title and registration system. *Pierce*, 253 F.3d at 1237-38. The state of Kansas began issuing citations to owners of vehicles that were registered under the Potawatomi system but were driven on state land and roads. *Id*. The Potawatomi filed a lawsuit in federal court to enjoin the state of Kansas from issuing the citations and for a declaratory judgment that the state recognize the Potawatomi vehicle registrations. *Id*. The district court granted a preliminary injunction and the Tenth Circuit upheld that decision, finding injury to the Potawatomi in the "threat of continued citation by the state." *Id*. at 1251.

In *Seneca-Cayuga*, "the State of Oklahoma sued the Seneca-Cayuga and Quapaw Tribes in separate actions in state court seeking to enjoin the operation of Tribal bingo games, which violate the gaming laws of the state." 874 F.2d at 710. The tribes then brought an action in federal court seeking declaratory and injunctive relief against the state of Oklahoma. *Id*. The district court entered a preliminary injunction and the Tenth Circuit upheld the injunction finding irreparable injury where the threatened loss of revenues and jobs created the "prospect of significant interference with [tribal] self-government." *Id*. at 716.

In this case, Plaintiffs have failed to show that they will suffer irreparable injury. Assessing a tax against a partially private and partially Indian-owned limited liability company is not an injury. It is informing the company how much it will owe if the tax must be paid. Plaintiffs claim that in order to determine the amount owed, the County must intrude upon the land "to audit CTGW's records for each tax period." Dkt. 2 at 21. Plaintiffs cite no authority for the proposition that the auditing of business records is irreparable injury. While the Tribe may have immunity from state taxation, the question of whether CTGW may also have immunity is unclear, and being subject to record inspection is insufficient injury to alter the status quo.

### 2. Balance of Hardships

Plaintiffs claim that "[i]f the injunction is not issued, the impact on the Tribe will be significant." Dkt. 2 at 21. Plaintiffs still fail to show how the assessor informing them how much they *may* owe is a significant hardship. Plaintiffs admit that they entered into a "unique structure" and until the Court decides the merits of the immunity issue, there is no reason to consider CTGW as anything but a limited liability company. As such, it should be subject to an assessment of taxes as are the majority of other businesses in this state.

## C. Conclusion

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1362, and 1367. The Court should not abstain from asserting jurisdiction and is not divested of jurisdiction by the Tax Injunction Act. As for the preliminary injunction, Plaintiffs have failed to show either that they will suffer irreparable injury or that the balance of hardships tips sharply in their favor. As such, Plaintiffs' request for the Court to issue a preliminary injunction is denied.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that Plaintiffs' Motion for a Preliminary Injunction (Dkt. 2) is **DENIED**.

DATED this 21st day of October, 2008.

BENJAMIN H. SETTLE
United States District Judge