# Exhibit A



STATE OF WASHINGTON

# DEPARTMENT OF REVENUE

February 27, 2007

Confederated Tribes of the Chehalis Reservation
CTGW LLC
c/o Harold Chesnin, Esq.
1810 - 43rd Ave. E., #203
Seattle, WA 98112

Subject: CTGW LLC (Chehalis Tribe and Great Wolf Resorts Joint Venture at Grand Mound)

Dear Mr. Chesnin:

This letter to the Confederated Tribes of the Chehalis Reservation and CTGW LLC, through you as their legal counsel, is to outline the Department of Revenue's position on the applicability of Washington State's taxes to various elements of the joint venture between the Confederate Tribes of the Chehalis ("Chehalis Tribe") and Great Wolf Resorts under the name CTGW LLC (a Delaware limited liability company) for the development of an indoor water park & hotel resort on federal trust property located near Grand Mound, Washington.

First, I want to thank you for so diligently working through the facts with me. This is an unusual situation. Typically the rule of thumb followed by the Department is that a joint venture between a Tribe and a nonIndian is viewed as a nonIndian entity and thus does not enjoy any of the favorable tax treatment reserved to Indian Tribes. Your particular arrangement is unique, and as set forth in the remainder of this letter, the resulting tax treatment is also unique. I want to note that the case law in this area continues to evolve. The various decisions of the U.S. Supreme Court have only occasionally addressed this type of issue and the lower courts have wrestled with this to various degrees. Whatever uncertainties we are left with, I think we can agree that the courts conduct a careful balancing test, which requires that the appropriate interests of the Tribe, the State, and the Federal government be taken into account. It falls to the Department of Revenue to exercise its best judgment in applying this test, taking into full consideration the interests of the Tribe and the State and what direction can be drawn from what the courts have told us. The pivotal questions upon which the department's position is based are "do the Chehalis Tribe's activities contribute to the value of the goods and services that are sold at the resort?" and "are the tribal and federal interests sufficient to preempt the state's assertion of taxing authority over nonIndians at the resort?"

This opinion is based on the following agreed facts.

Interpretations and Technical Advice Division
P O Box 47453 ♦ Olympia, Washington 98504-7453 ♦ Phone (360) 570-6124 ♦ Fax (360) 586-5543

05

Mr. Harold Chesnin, Esq.
February 27, 2007
Page 2 of 10

**Agreed Facts:**

- Approximately four years ago, the tribe purchased 43 acres near the freeway, Exit 88, Highway 12, in Grand Mound, WA, which was converted to non-contiguous federal trust property.
- The tribe now plans to use 39 of the 43 acres to develop an indoor water park, hotel and convention center with Great Wolf Resorts (a non-Indian corporation).
- The tribe and Great Wolf Resorts ("GWR") formed a joint venture in the form of a "pass-through" Delaware LLC (CTGW LLC) for this project that is 51% owned by the tribe and 49% owned by GWR, with there being no centralized management at the LLC level. However, Great Wolf Resorts has a separate management contract paid from the proceeds generated on the reservation. The management contract has not been approved by the Department of Interior pursuant to 25 USC Sec. 81.
- GWR contributes 15% cash (equity) to the project, which will cost approximately 100 to 110 million dollars. The tribe gets credited 15% equity for contributing non-monetary benefits, including the lease valued at 12 million, as well as 5 to 6 million dollars in cash. Mr. Chesnin characterized GWR as financing the project and managing the venture.
- The joint venture will have a master lease on the 39 acres for 25 years, plus another 25 year extension. Leases are heavily regulated by the federal government and this 50 year combination is the longest term generally allowed. Leases of longer duration require specific legislation.
- The tribe plans to build a tribal police station on the remaining 4 acres of the trust parcel together with other economic development such as a possible movie theater.
- A fledgling tribal construction company ("Saxas") will receive a 10% carve out of all construction contracts for this project.
- The Tribe will be providing all governmental services to the facility. The Tribe will be provide police services by the Tribal Police, fire (on a fee for services basis), and sewer and water by MOU with Thurston County. The Tribe owns the infrastructure, purchases the sewer and water and then redistributes it to the end user. In addition, the tribe is funding directly and/or providing the funds to Thurston County. Therefore, the county does not invest any money in the infrastructure or service.
- The Tribe claims the activities of the joint venture qualify as "essential governmental services" provided for in the state-tribe compact. The LLC will work to train tribal employees, including management training for key positions, to foster enrolled member employment and education.
- The joint venture will receive a license for GWR brands.

Mr. Harold Chesnin, Esq.
February 27, 2007
Page 3 of 10

Legal Analysis:

**I. Case Law Development of the Preemption Doctrine & Rule 192:**

Where an Indian tribe is challenging a state's tax, the grounds are generally federal preemption. The language in the U.S. Constitution that is the basis for preemption of a state's taxing authority states: "The Congress shall have Power ... [t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S.C.A. Const. Art. 1, § 8, cl. 3. When the preemption analysis is applied to Indian cases, the courts consider the unique origins of tribal sovereignty and how it differs from state sovereignty. *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143, 100 S.Ct. 2578, 2582-84, 65 L.Ed.2d 665 (1980). "State jurisdiction is preempted by the operation of federal law if it interferes or is incompatible with federal and tribal interests reflected in federal law, unless the State interests at stake are sufficient to justify the assertions of the state's authority." *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 334, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983).

When a tribe is challenging a state's tax, "[t]he initial and frequently dispositive question ... is who bears the legal incidence of a tax." *Oklahoma Tax Comm'n v. Chickasaw Nation*, 515 U.S. 450, 458, 115 S.Ct. 2214, 132 L.Ed.2d 400 (1995). "If the legal incidence of an excise tax rests on a tribe or on tribal members for sales made inside Indian country, the tax cannot be enforced absent clear congressional authorization." *Id.* at 459, 115 S.Ct. 2214. The outcome is the result of a per se and a categorical bar to taxing Indians in Indian Country. The law regarding Washington state's taxation of Indians and transactions in Indian country is described in WAC 458-20-192 **Indians – Indian country** ("referred to as Rule 192"). Generally, the state does not tax enrolled members or their tribe on the tribe's Indian reservation. Rule 192 (5) states:

> **Enrolled Indians in Indian country. Generally.** The state may not tax Indians or Indian tribes in Indian country. For the purposes of this rule, the term "Indian" includes only those persons who are enrolled with the tribe upon whose territory the activity takes place and does not include Indians who are members of other tribes. An enrolled member's spouse is considered an "Indian" for purposes of this rule if this treatment does not conflict with tribal law. This exclusion from tax includes all taxes (e.g., B&O tax, public utility tax, retail sales tax, use tax, cigarette tax). If the incidence of the tax falls on an Indian or a tribe, the tax is not imposed if the activity takes place in Indian country or the activity is treaty fishing rights related activity (see subsection (6)(b) of this rule). "Incidence" means upon whom the tax falls. For example, the incidence of the retail sales tax is on the buyer.

However, where, as here, "the legal incidence of the tax rests on non-Indians, no categorical bar prevents enforcement of the tax; if the balance of federal, state, and tribal interests favors the State, and federal law is not to the contrary, the State may impose its levy...." *Id.* This "legal

Mr. Harold Chesnin, Esq.
February 27, 2007
Page 4 of 10

incidence of tax" distinction is a factor in the *Bracker* test. Rule 192 (7)(c) incorporates the *Bracker* balancing test when dealing with nonmembers dealing with the Tribe or tribal members and states:

> **(c) Preemption of tax on nonmembers – balancing test – value generated on the reservation.** In certain instances state sales and use tax may be preempted on nonmembers who purchase goods or services from a tribe or tribal members in Indian country. The U.S. supreme court has identified a number of factors to be considered when determining whether a state tax borne by non-Indians is preempted, including: The degree of federal regulation involved, the respective governmental interests of the tribes and states (both regulatory and revenue raising), and the provision of tribal or state services to the party the state seeks to tax. See *Salt River Pima-Maricopa Indian Community v. Waddell*, 50 F.3d 734, (1995). This analysis is known as the "balancing test." This preemption analysis does not extend to subsequent transactions, for example if the purchaser buys for resale the tax imposed on the consumer in the subsequent sale is not preempted. However, because these balancing test determinations are so fact-based, the department will rule on these issues on a case-by-case basis.

Thus, the balancing test is "not dependent on mechanical or absolute conceptions of state or tribal sovereignty, but has called for a particularized inquiry into the nature of the state, federal, and tribal interests at stake, an inquiry designed to determine whether, in the specific context, the exercise of state authority would violate federal law." *Bracker*, 448 U.S. at 145, 100 S.Ct. 2578. Tribes have a recognized: "interest in raising revenues for essential governmental programs, [and] that interest is strongest when the revenues are derived from value generated on the reservation by activities involving the Tribes and when the taxpayer is the recipient of tribal services." *State of Washington v. Confederated Tribes of the Colville Indian Reservation, 447 U.S. 134, 156-57, 100 S.Ct. 2069*, 65 L.Ed.2d 10 (1980).

Here, the Chehalis Tribe is arguing against the state's taxation of the revenues from their joint venture with Great Wolf Resorts as derived from value generated primarily on their reservation and an activity preempted by federal and tribal law. The U. S. Supreme Court has analyzed this issue in numerous cases, including *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 219-20, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987) (balancing tribal and state interests by examining the bingo enterprise as including the facilities and ancillary services offered to patrons); *Bracker, 448 U.S. at 145-51, 100 S.Ct. 2578* (weighing the tribe's general economic interest in its timber industry to invalidate a state motor carrier license tax and a use fuel tax applied to non-Indians doing business with the tribe); *Indian Country U.S.A. v. Oklahoma Tax Comm'n, 829 F.2d 967, 986 (10th Cir. 1987)* (weighing the tribe's interest in its bingo enterprise as a "form of entertainment"); and *Gila River Indian Community v. Waddell, 967 F.2d 1404, 1410 (9th Cir.1992)* (weighing the state interests in taxing tickets to on-reservation events and concessionary items against the tribes' "involvement in the production of the entertainment

Mr. Harold Chesnin, Esq.
February 27, 2007
Page 5 of 10

events that take place on its reservation"). Of course, states have a "legitimate governmental interest in raising revenues, and that interest is ... strongest when the tax is directed at off-reservation value and when the taxpayer is the recipient of state services." *Colville*, 447 U.S. 134, 157, 100 S.Ct. 2069 (1980).

Interestingly, a major issue is the nature of the limited liability company between the Chehalis Tribe and Great Wolf Resorts, named CTGW LLC, which was formed for purpose of this joint venture. WAC 458-20-203 (Rule 203), initially makes one believe that the Department will tax profit distributions at the level of the limited liability company (CTGW LLC). However, the Appeals Determinations of the Department show a long history of not taxing the limited liability company as a separate entity on true distributions of profits or capital. (See Det. No. 99-292R, 19 WTD 845 (2000).) To quote one Appeals Determination: "...we hold that a taxpayer who is a member of an LLC and seeks to avoid taxation on a payment from an LLC must establish that the payment was either a profit-sharing payment, a pass-through payment deductible in accordance with WAC 458-20-111 (Rule 111), or is otherwise exempt. (See Det. No. 02-0123, 22 WTD 206 (2003).) We determined based on the above facts, that the limited liability company (CTGW LLC) will qualify for pass-through treatment on its distribution of profits and capital.

**II. Construction Activities on Tribe's Federal Trust Property**

All of the construction is performed on the tribe's non-contiguous federal trust property by: (1) Saxas, the Tribe's construction company, which will receive a 10% carve out of all construction contracts, (2) businesses owned by enrolled Tribal members, or (3) non-Indians. Turning first to Saxas, as a tribally chartered entity of the Chehalis Tribe performing services on Chehalis Tribal trust property, Saxas is excluded from retail sales tax, use tax, B&O tax, and all other state taxes. See Rule 192 (5) **Enrolled Indians in Indian country.**

Rule 192 (5)(d) **Corporations or other businesses owned by Indians,** also states that a state chartered entity owned solely by Chehalis enrolled members will also be exempt from state taxation for activities on the Chehalis Tribe's reservation. Similarly partnership, limited liability companies and other such business entities solely owned by Chehalis enrolled members will also not be subject to the state's taxation for services constructing this indoor water park and hotel resort.

Non-Indians performing construction activities for the Tribe on the Tribe's reservation do not owe Washington state on the B&O tax (chapter 82.04 RCW). (See Rule 192(b).) Further, tangible personal property sold to the Tribe and delivered to their reservation is not subject to sales or use tax. (See Rule 192 (b)(i).) Services performed in construction contracts by non-Indians on property located on the Tribe's reservation are also not subject to B&O tax. (See Rule 198(b)(ii).)

Mr. Harold Chesnin, Esq.
February 27, 2007
Page 6 of 10

Rule 192 incorporates the same principles as the U.S. Supreme Court opinion that ruled federal law preempted a state tax imposed on gross receipts that a non-Indian construction company received from the tribal school board for construction of school for Indian children on the reservation. The court in its holding stated:

> The State's ultimate justification for imposing this tax amounts to nothing more than a general desire to increase revenues. This purpose, as we held in *White Mountain*, 448 U.S., at 150, 100 S.Ct., at 2586, is insufficient to justify the additional burdens imposed by the tax on the comprehensive federal scheme regulating the creation and maintenance of educational opportunities for Indian children and on the express federal policy of encouraging Indian self-sufficiency in the area of education. This regulatory scheme precludes any state tax that "stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).
>
> In sum, the comprehensive federal regulatory scheme and the express federal policy of encouraging tribal self-sufficiency in the area of education preclude the imposition of the state gross receipts tax in this case.

Ramah Navajo School Board, Inc., et al., v. Bureau of Revenue of New Mexico, 458 U.S. 832, 102 S.Ct. 3394, 73 L.Ed.2d 1174 (1982).

### III. Non-Indians in Indian Country:

The taxation of non-Indians doing business in Indian country is outlined in WAC 458-20-192 (7), which states:

> Nonmembers in Indian country - preemption of state tax. Generally, a nonenrolled person doing business in Indian country is subject to tax. Unless specifically described as preempted by this rule, the department will review transactions on a case-by-case basis to determine whether tax applies. Thus, non-Indians are taxed, unless preempted by federal law.

Non-Indians, which includes Indians who are not enrolled members of the tribe whose territory the activity is being performed in, are taxable on the reservation for sales, use, business and occupation ("B&O") tax, public utility tax, cigarette tax, and other state taxes, unless preempted. Tribes have a recognized "interest in raising revenues for essential governmental programs, [and] that interest is strongest when the revenues are derived from value generated on the reservation by activities involving the Tribes and when the taxpayer is the recipient of tribal services." *State of Washington v. Confederated Tribes of the Colville Indian Reservation*, 447 U.S. 134, 156-57, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980). In our case, based on the facts given to the Department,

10

Mr. Harold Chesnin, Esq.
February 27, 2007
Page 7 of 10

the revenues from sales and use taxes are we believe from value generated on the reservation by the Chehalis tribe and its enrolled tribal members, if the tribe continues its significant involvement and active contribution, including initiating programs to ensure employment and training of enrolled members, including upper level management positions. Thus, no sales or use tax will be owed by enrolled members and non-Indians for purchases of tangible personal property and services from the Tribe or Great Wolf Resort's activities located on the Chehalis Tribe's federal trust property.

However, if the resort incorporates non-Tribal retail stores selling goods manufactured off the reservation, the sales from such stores to non-Indians would require the collection of retail sales and use taxes and the seller would owe B&O tax under the retail sales category.

CTGW LLC, a Delaware LLC, owned by the Chehalis Tribe and the Great Wolf Resorts, is a pass-through entity, and therefore we look to the entity's two owners to see if they owe B&O tax. As described above, the Chehalis Tribe and its enrolled members are not taxable on activities occurring on their reservation. However, Great Wolf Resorts is taxable on its stream of investment income (profit distributions) from the joint venture under the B&O tax, since their income constitutes gross business income under RCW 82.04.080. The income Great Wolf Resorts receives from its management contract is treated differently as described below.

As noted earlier, that there is an argument to be made that the joint venture should be viewed as a nonIndian, and thus subject to tax. We do not take that view under these facts. Should the facts change, we would have to reevaluate our position and this ruling.

IV. Management Contract

There are two separate federal statutes that require government approval of management contracts. The first is 25 USC Section 81 and the second is the more recently passed Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701 et seq. We will only examine Section 81, since IGRA only applies to casino management contracts. However, this strict federal regulation of management contracts, cause the Department to determine, using the *Bracker* balancing test, that the income earned by Great Wolf Resorts under the management contract is not taxable under Washington state's gross proceeds B&O tax.

A. Section 81

Congress enacted the precursors to 25 U.S.C. Section 81 in the early 1870s. See Act of March 3, 1871, ch. 120, Section 3, 16 Stat. 570; Act of May 21, 1872, ch. 177, Sections 1-2, 17 Stat. 136. The statute took its modern form in 1958 and was amended in 2000, to incorporate its interaction with the Indian Gaming Regulatory Act ("IGRA"). Non-casino contracts between Indians and non-Indians, as we have in this case, require Section 81 approval by the Secretary of the Interior ("Secretary") under the terms of the statute. Any contract with an Indian or Indian tribe that was

Mr. Harold Chesnin, Esq.
February 27, 2007
Page 8 of 10

not approved by the Secretary as required by § 81 was "null and void" by the statute's express language. In our case, the management contract between the Chehalis Tribe and Great Wolf Resorts will not receive Section 81 approval. However, the statutory scheme still exists and administrative actions or omissions do not negate the level of regulation for our preemption analysis.

Further, Section 81 authorizes a qui tam action in the name of the United States to recover amounts paid by Indians in excess of what was authorized by the Secretary. Thus, even if a management contract is not approved by the federal government for the Chehalis Tribe regarding the Grand Mound resort, Great Wolf Resorts is still subject to this "qui tam" (what some call the "bounty hunter") provision. Thus, this non-casino water park and hotel resort still requires the management contract to undergo section 81 approval. Since the federal government regulates management contract for projects like the indoor water park & hotel resort at this level, the activity is preempted from Washington state's taxation. Therefore, the income Great Wolf Resorts receives from the management contract is not subject to Washington state's B&O tax.

It should also be noted that the "Indian trader" cases, dealing with the federal government's regulation under the provisions of 25 USC Sections 261 – 264, also support federal preemption. These cases involve situations where traders have provided tangible personal property to tribes, as opposed to services, resulting in federal preemption of a state's regulation and taxation. See *Warren Trading Post v. Arizona Tax Commission,* 380 US 7685, 85 S.Ct. 1242, 15 L.Ed.2d 165; and *Central Machinery Co. v. Arizona State Tax Commission,* 448 U.S. 160, 168 100 S. Ct. 2592, 2596, 65 L.Ed.2d 684.

**B. Rule 192**

Rule 192 properly acknowledges preemption in both the provision of goods and services to tribes and enrolled tribal members located on the tribe's territory. Rule 192 (7)(b) states:

> **(b) Preemption of B&O and public utility tax - sales of tangible personal property or provision of services by nonmembers in Indian country.** As explained in this subsection, income from sales in Indian country of tangible personal property to, and from the performance of services in Indian country for, tribes and tribal members is not subject to B&O (chapter 82.04 RCW) or public utility tax (chapters 82.16 and 54.28 RCW). The taxpayer is responsible for maintaining suitable records so that the taxpayer and the department can distinguish between taxable and nontaxable activities.
>
> (i) **Sales of tangible personal property.** Income from sales of tangible personal property to the tribe or to tribal members is not subject to B&O tax if the tangible personal property is delivered to the buyer in Indian country and if:

Mr. Harold Chesnin, Esq.
February 27, 2007
Page 9 of 10

    (A) The property is located in Indian country at the time of sale; or

    (B) The seller has a branch office, outlet, or place of business in Indian country that is used to receive the order or distribute the property; or

    (C) The sale of the property is solicited by the seller while the seller is in Indian country.

    (ii) **Provision of services.** Income from the performance of services in Indian country for the tribe or for tribal members is not subject to the B&O or public utility tax. Services performed outside of Indian country are subject to tax. In those instances where services are performed both on and off of Indian country, the activity is subject to state tax to the extent that services are substantially performed outside of Indian country.

    (A) It will be presumed that a professional service (e.g., accounting, legal, or dental) is substantially performed outside of Indian country if twenty-five percent or more of the time taken to perform the service occurs outside of Indian country. The portion of income subject to state tax is determined by multiplying the gross receipts from the activity by the quotient of time spent outside of Indian country performing the service divided by total time spent performing the service.

Thus, the income for providing the services to the tribe by Great Wolf Resorts in managing the resort is not taxable under the state's B&O tax.

**Conclusion:**

In conclusion, in this joint venture, all of the Washington state sales and use taxes are exempted under federal preemption. Regarding the B&O tax, all construction contractors performing services for the Tribe on its reservation are excluded from paying B&O tax. Since CTGW LLC is a pass-through entity, we analyze the taxability of Great Wolf Resorts, a non-Indian separately from the Tribe. The income earned by GWR from performing services under the management contract is exempt from state taxation under federal preemption. However, the stream of investment income (profits distributions) flowing to GWR from the joint venture is taxable under Washington state's B&O tax. This ruling is based on the Tribe maintaining majority ownership of the facility, exercising control over the operation of the facility, control over distribution and sale of products and services, and having significant Tribal employment at the facility. Finally, this ruling is limited to the facts and issues as you have presented them to us. A variation of the facts could produce a very different outcome, and could result in tax liability to either the Tribe or to persons with whom you transact business. If you disagree with this ruling, you of course have the right to appeal to the Department of Revenue's Appeals Division. You must appeal within 30 days of the date of this letter. WAC 458-20-100 explains the Department's appeal procedures.

Mr. Harold Chesnin, Esq.
February 27, 2007
Page 10 of 10

More importantly, if you disagree with this ruling, it is always preferable to continue to talk, and I would welcome any additional thoughts and input from you.

If you have any questions, please feel free to call me at (360) 570-6133 or e-mail me at markbohe@dor.wa.gov. Thank you for your cooperation on this matter.

Sincerely,

*Mark E. Bohe*

Mark E. Bohe
Tax Policy Specialist

Cc:   Leslie Cushman, Deputy Director
      Stuart Thronson, Assistant Director, Special Programs
      Mike Grundhoffer, Assistant Director, Audit
      Brad Flaherty, Assistant Director, Property Tax
      Jan Bianchi, Assistant Director, Interpretation & Technical Advice

# Exhibit B



# STATE OF WASHINGTON
DEPARTMENT OF REVENUE

August 28, 2008

The Honorable Patricia Costello
Thurston County Assessor
2000 Lakeridge Drive Southwest
Olympia, Washington 98502-6045

**Property Taxation of Great Wolf Lodge**

Dear Ms. Costello:

Some time ago, the Department was requested by Thurston County to provide an opinion regarding the issue of whether the improvements located at Great Wolf Lodge in Grand Mound, Washington, are subject to property taxation. After some meetings with both the county and tribal representatives, an exchange of correspondence with the Tribe, and a recent opportunity to review additional documents provided by the Tribe, this letter sets out the decision reached by the Department.

In a letter dated April 24, 2008, from the Department to Mr. Harold Chesnin, tribal attorney, the Department requested additional information and documentation to support the Tribe's view that the property at Great Wolf was exempt from state property tax. In that letter, the Department stated the issue as follows: Are the nature of the federal, Tribal, and state interests relative to that property such that the imposition of property tax on the improvements at Great Wolf violates federal law? The letter concluded that "based on information available to date" "it does not appear that the Tribal involvement is sufficient to preempt state property taxation." Since then, additional factual information has been provided by the Tribe. The issue is still how to apply the balancing test prescribed in *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 100 S. Ct. 2578 (1980), and subsequent cases, to determine "whether, in the specific context, the exercise of state authority would violate federal law."

The "specific context" here involves the ownership of improvements (buildings including a resort hotel, indoor water park, and conference center valued at over $100 million) by a limited liability company (LLC) formed in Delaware and registered in Washington. The improvements are located on land owned by the federal government in trust for the Chehalis Tribe. The LLC has two members, Great Wolf Resorts, Inc. (GWR) and the Tribe. It appears that the ownership interests in the LLC are 51 percent owned by the Tribe, and 49 percent owned by GWR. GWR is the managing member of the LLC, and the day-to-day management and operation of the resort is by the LLC through a management agreement with an affiliate of GWR. The Tribe, however, appears to have veto authority over any significant actions by the LLC that would put the Tribe at risk or compromise tribal functions and any such actions must receive prior approval by the Tribe.

Executive Division
P.O Box 47454 ♦ Olympia, Washington 98504-7454 ♦ (360) 586-3462 ♦ Fax (360) 586-5543

16

The Honorable Patricia Costello
August 28, 2008
Page 2

In this specific context, it is perhaps easier to begin with what this factual situation is *not*. This is not a situation where the exercise of state authority, that is, the property taxation of the improvements located at Great Wolf Lodge, would unlawfully infringe "on the right of reservation Indians to make their own laws and be ruled by them." A similar issue was addressed and decided in *Chief Seattle Properties, Inc. v. Kitsap County*, 86 W. 2d 7, 541 P.2d 699 (1976).

This is not a situation where one federal statute specifically "occupies the field" such that federal preemption applies, and the exercise of state authority would violate federal law. An example of this type of federal statute is the Indian Gaming Regulatory Act of 1988 (IGRA). There is no single federal statute here that we are aware of that would preclude the imposition of state property taxes on the Great Wolf improvements.

This is not a situation where, as in the cases of *Bracker* (cited above) and *Ramah Navajo School Bd., Inc. v. Bureau of Revenue of New Mexico*, 458 U.S. 832, 102 S.Ct.3394 (1982), the U. S. Supreme Court found that Congress had set up systems such that the federal regulatory scheme was so pervasive or comprehensive that taxation or regulation by the state would interfere with the federal purpose. (Those cases had to do with cutting of tribal timber and building a school on a reservation, respectively.) Although the federal government has been involved here, in terms of taking the land into trust status, approving the lease agreement between the Tribe and GWR, and also with respect to the overall federal interest in assisting tribes in their efforts to achieve economic self-sufficiency, it does not appear that there is any "pervasive" federal regulatory scheme that would preempt state taxes.

For purposes of the balancing test, then, we must look more closely at the tribal and state interests involved here. The Tribe (apparently not the LLC) has arranged for, or contracted with, a number of governmental agencies to provide services to the Great Wolf Lodge on a cost or other basis. For example, fire protection services are apparently provided by a local fire protection district on a contractual basis. Sewer and water services are apparently provided by the county on a contractual and cost basis. These are normally services that would be provided to parcels of property funded by property taxes that are paid on the basis of value of the property served. It is unknown whether ambulance services to the premises have been arranged for or contracted with. The Tribe also apparently does all the permitting for building construction, all the inspections necessary for safety, health, food handling and preparation, and provides the security and police protection at the site. The Tribe controls and administers all zoning regulations at the site. The Tribe and CTGW, LLC use a private insurance program and employees at Great Wolf are not part of the state workers compensation program.

On the other hand, the state has an interest in building and maintaining the roads that provide access to the Great Wolf site. Without those roads, Great Wolf would be largely inaccessible and unable to operate as a resort. The state provides courts for the adjudication of civil and criminal matters which may arise at the Great Wolf site, particularly where non-Indians are involved. Emergency medical services, including ambulance services, are also provided through the fire district. Other state services that are provided include libraries and schools. These are all partially, and some substantially, funded through property taxation.

The Honorable Patricia Costello
August 28, 2008
Page 3

In *Ramah Navajo School Board v. Bureau of Revenue*, 458 U.S. 832, (1982) state gross receipt taxes on a non-Indian contractor were preempted because "these taxes impeded the federal interest in "guaranteeing Indians that they will 'receive…the benefit of whatever profit [the forest] is capable of yielding,.." *Ramah* emphasizes that the federal statutes and regulations do not have to specifically preempt state authority. In *Ramah*, the court said that the state providing services to the contractor for its off-reservation activities is "not a legitimate justification for a tax whose ultimate burden falls on the tribal organization." The court in *Ramah*, as noted above, found that the federal government had a pervasive regulatory scheme that would preempt the state, which we have not found evident here. There is a generalized federal interest, however, in self-determination and economic success, which factor has some weight. The 1987 Cabazon case *(California v. Cabazon Band of Indians, 400 US 402 (1987)* made reference to these generalized interests thusly:

> The inquiry is to proceed in light of traditional notions of Indian sovereignty and the congressional goal of Indian self-government, including its "overriding goal" of encouraging tribal self-sufficiency and economic development. *Id., at 334-335*. See also, Iowa Mutual Insurance Co. v. LaPlante, ante, p. 9; *White Mountain Apache Tribe v. Bracker, 448 U.S. 136, 143 (1980)*. These are important federal interests. They were reaffirmed by the President's 1983 "Statement on Indian Policy."

In the case of *Cotton Petroleum Corp. v. New Mexico*, 490 U.S. 163, at 189-190, 109 S. Ct. 1698, 104 L. Ed. 2d 209 (1989) involving a state severance tax imposed on a non-Indian lessee's on-reservation production of oil and gas, the court stated as follows with respect to the preemption balancing test:

> [The lessee's] most persuasive argument is based on the evidence that tax payments by reservation lessees far exceed the value of services provided by the State to the lessees, or more generally, to the reservation as a whole. . . . There are, however, two sufficient reasons for rejecting this argument. First, the relevant services provided by the State include those that are available to the lessees and the members of the Tribe off the reservation as well as on it. The intangible value of citizenship in an organized society is not easily measured in dollars and cents . . . . Second, there is no constitutional requirement that the benefits received from a taxing authority by an ordinary commercial taxpayer-or by those living in the community where the taxpayer is located-must equal the amount of its tax obligations.

In weighing the relative tribal interests and state interests, it is difficult to say with legal certainty what the appropriate conclusion must be relative to state taxation of the personal property (improvements) located at Great Wolf.

Before we reach a conclusion, however, one other aspect of the "specific context" of this case is worth exploring and that involves a look at the formation of the joint venture LLC. All of the appellate court cases that we have found refer to the balancing test in the context of a non-Indian engaged in a transaction with tribes or tribal members on the reservation. *Wagnon v. Prairie*

18

The Honorable Patricia Costello
August 28, 2008
Page 4

*Band Potawatomi Nation*, 546 U.S. 95, 126 S. Ct. 676 (2005). There are no cases of which we are aware that identify the "non-Indian" as anything other than totally non-Indian, as opposed to the situation here where the LLC, as an entity, is technically a non-Indian, but there is no denying that the Tribe has a direct and substantial ownership interest in the LLC. The relevance of this fact for purposes of the balancing test is that the Tribe has more control over the operations of the LLC than would be the case for a lessee entity that was totally non-Indian. That additional control can be exercised by the Tribe in ways that help to preserve its traditional tribal interests, which is a significant federal purpose. The balancing test does require that the federal interests be taken into account, and we believe they are not insignificant here.

This is a situation that is a matter of "first impression," at least in Washington, and as far as can be determined, in the United States. We have been provided access to the LLC formation agreement, the Management Agreement, and the lease agreement between GWR and the Tribe, and based upon our review of those documents, and upon the representations made by the Tribe, we have reached a conclusion. Although the relevant facts are still not as clear as we would like, and although a legitimate argument could be made either for federal preemption or for state taxation, it appears that the balance of the federal, state, and tribal interests tilt in favor of federal preemption for this property.

Because the management agreement and the LLC agreement contain sensitive and proprietary information, the Tribe has requested that no copies be made and the information remain in DOR offices until review is complete. Upon completion of the review, they request that the information be returned to the Tribe. Although county representatives have reviewed the information, their review was performed before receiving DOR's analysis. In the event you wish to review the information in the context of the analysis provided in this letter, we will keep the records in our office until Friday, September 12, 2008, at which point we will return the documents to the Tribe. To arrange a time for the review, please contact my office at (360) 570-5860.

Sincerely,

Brad Flaherty
Assistant Director
Property Tax Division

BF:slc
cc:   Harry Chesnin, Confederated Tribes of the Chehalis Reservation
      Cindi Holmstrom, Director
      Leslie Cushman, Deputy Director

19

CERTIFICATE OF SERVICE

I, Gabriel S. Galanda, say:

1. I am now, and at all times herein mentioned, a citizen of the United States, a resident of the State of Washington, over the age of 18 years, not a party to or interested in the above-entitled action, and competent to be a witness herein.

2. On March 12, 2009, I electronically filed the following documents with the Clerk of the Court using the CM/ECF system:

- Declaration of Leslie Cushman, Deputy Director of The Washington State Department of Revenue;

which will send notification to the following via e-mail:

David V. Klumpp
klumppd@co.thurston.wa.us; olsenl@co.thurston.wa.us

Jane Futterman
futterj@co.thurston.wa.us; olsenl@co.thurston.wa.us

Scott C. Cushing
cushins@co.thurston.wa.us

DATED this 12th day of March, 2009.

/s Gabriel S. Galanda, WSBA #30331
WILLIAMS KASTNER
601 Union Street, Suite 4100
Seattle, WA 98101-2380
Telephone: (206) 628-6600
Fax: (206) 628-6611
Email: ggalanda@williamskastner.com

Attorneys for Plaintiffs Confederated Tribes of the Chehalis Reservation and CTGW, LLC

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE: DEPARTMENT OF REVENUE DECISION - 20
(C08-5562)
2460578.1

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600