UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THURSTON COUNTY BOARD OF EQUALIZATION, et al., <br><br> Defendants. | CASE NO. C08-5562BHS <br><br> ORDER TO SHOW CAUSE |

This matter comes before the Court on Plaintiffs' Motion for Summary Judgment (Dkt. 54). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby orders the parties to show cause as stated herein.

## I. PROCEDURAL BACKGROUND

On September 18, 2008, Plaintiffs Confederated Tribes of the Chehalis Reservation ("Tribe") and CTGW, LLC ("CTGW") filed a complaint against Defendants Thurston County Board of Equalization; equalization board members John Morrison, Bruce Reeves and Joe Simmonds; Thurston County Assessor Patricia Costell; and Thurston County. Dkt. 1. Plaintiffs alleged that Defendants are violating the U.S. Constitution as well as federal common law by imposing a personalty tax on CTGW's facility, the Great Wolf Lodge. *Id.* ¶ 1.

On September 18, 2008, Plaintiffs also filed a Motion for Preliminary Injunction. Dkt. 2. On September 29, 2008, Defendant Thurston County Assessor responded and argued that the Court should either abstain from asserting its jurisdiction or was divested of jurisdiction pursuant to the Tax Injunction Act, 28 U.S.C. § 1362. Dkt. 13 at 2-3. On October 16, 2008, the Court held a hearing on the preliminary injunction motion and heard oral arguments from counsel. Dkt. 21.

On October 21, 2008, the Court asserted jurisdiction over this action, declined to abstain from this action, and found that "Plaintiffs, as joined" met a 28 U.S.C. § 1362 exception to the Tax Injunction Act. Dkt. 24 at 4-6. With regard to abstention, the Court stated that the state court action did not "provide the relief that Plaintiffs are seeking in this action" and that "although functionally equivalent, a state tax exemption is not federal immunity from state taxation." *Id*. at 5. With regard to the Tax Injunction Act, the Court found that the Tribe's involvement in this action was a "significant factor" in favor of finding that Plaintiffs met "the [28 U.S.C.] § 1362 exception to the Tax Injunction Act." *Id*.

On March 9, 2006, Plaintiffs filed a First Amended Complaint for Declaratory and Injunctive Relief. Dkt. 46. Plaintiffs allege a new claim that reads as follows:

> [The State of Washington Department of Revenue ("Revenue")] has control over Defendants' administration of assessment and tax laws pursuant to RCW 84.08.010, *et seq.*
> Defendants must follow any act, order or direction issued by Revenue as to any matter relating to the administration of the assessment and taxation laws of the State of Washington **pursuant to RCW 84.08.010**, *et seq.*
> Defendant County Assessor Costello sought Revenue's opinion regarding the preemption of the instant personalty tax on the Improvements.
> Revenue issued an opinion that, based on the balance of the federal, state, and Tribal interests at issue, federal law preempted the instant personalty tax on the Improvements.
> By assessing and attempting to collect the instant personalty tax through distraint of the Improvements, Defendants are in direct conflict with an act, order or direction issued by Revenue.
> Because Defendants must follow, and have no authority to act in conflict with, an act, order or direction of Revenue, their actions regarding the assessment, taxation and distraint of the Improvements **violate state law** and federal preemption law.

ORDER - 2

*Id*. ¶¶ 56-61 (emphasis added).

On March 12, 2009, Plaintiffs filed a Motion for Summary Judgment Re: Department of Revenue Decision. Dkt. 47. Plaintiffs argue that:

> Summary judgment is appropriate because there are no genuine issues of material fact regarding Defendants' failure to comply with an August 2008 decision issued by the Washington State Department of Revenue . . . pursuant to the requirements of state and federal law.

*Id*. at 2. On March 30, 2009, Defendants responded. Dkt. 52. On April 3, 2009, Plaintiffs replied. Dkt. 54.

## II. FACTUAL BACKGROUND

### A. The Lodge

The Tribe occupies a reservation at the confluence of the Black and Chehalis Rivers in Southwest Washington ("Reservation"). *Confederated Tribes of the Chehalis Indian Reservation v. State of Washington*, 96 F.3d 334, 338 (9th Cir. 1996). The Reservation, which was created by Secretarial Order in 1864, was set aside for "the use and occupation of the Chehalis Indians." 1 Kappler, *Indian Affairs, Laws and Treaties* 901-04 (2d ed. 1904). The Tribe has approximately 800 members, which include persons descended from the Upper Chehalis, the Lower Chehalis, Cowlitz, Satsop, Qualioqua and other aboriginal tribes of Southwest Washington. Dkt. 3, Declaration of Chairman Burnett, ¶ 5 ("Burnett Decl."). The Reservation has a land area of approximately 4,200 acres (about 7.022 square miles) in southeastern Grays Harbor and southwestern Thurston Counties. *Id*.

Approximately five years ago, the Tribe purchased 43 acres near the I-5 freeway, Exit 88, Highway 12, in Grand Mound, WA. Burnett Decl, ¶ 7. That property was subsequently converted to non-contiguous federal trust property and is currently held in trust by the United States for the benefit of the Tribe. *Id*.; *see also id*., Exh. B at 2.

In 2005, the Tribe and Great Wolf Resorts Inc., a non-Indian corporation with water park expertise, formed CTGW, a limited liability company, under Delaware law, for the purpose of building and owning Great Wolf Lodge Grand Mound ("Lodge"). *Id*. ¶

8. The Lodge is located on 39 of the 43 acres that are held in trust for the Tribe and consists of a hotel, conference center, indoor water park and other improvements ("Improvements"). *Id*. ¶ 9. The Tribe leases the property to CTGW. *Id*., Exh A., U.S. Dept. of the Interior Business Development Lease (recorded by the Bureau of Indian Affairs on July 2, 2007) ("Lease"). Under the CTGW operating agreement, the Tribe has a majority "proportionate share" of CTGW's profits of 51%, and Great Wolf receives the remaining 49% of CTGW's profits. Burnett Decl. ¶ 11. Plaintiffs claim that "[u]nder this unique structure, the Tribe is both the owner-lessor of the property and the majority-interest owner of the lessee." Amended Complaint, ¶ 22.

**B.     State Taxation**

In Washington, "personal property," for purposes of taxation, includes "all improvements upon lands the fee of which is still vested in the United States." RCW 84.04.080. The Washington Administrative Code further defines personal property as including "[a]ll privately owned improvements, including buildings and the like, upon publicly owned lands which have not become part of the realty." WAC 458-12-005. A county may enforce such taxes by placing liens on the assessed improvements and then selling them at a tax sale. RCW 84.60.020.

The State of Washington Department of Revenue exercises general supervision over state taxation and may formulate rules and processes for the assessment of taxes. The Washington statute that grants Revenue these powers reads, in part, as follows:

The department of revenue shall:

(1) Exercise general supervision and control over the administration of the assessment and tax laws of the state, over county assessors, and county boards of equalization, and over boards of county commissioners, county treasurers and county auditors and all other county officers, in the performance of their duties relating to taxation, and perform any act or give any order or direction to any county board of equalization or to any county assessor or to any other county officer as to the valuation of any property, or class or classes of property in any county, township, city or town, or as to any other matter relating to the administration of the assessment and taxation laws of the state, which, in the department's judgment may seem just and necessary, to the end that all taxable property in this state shall be listed upon the assessment rolls and valued and assessed according to the

ORDER - 4

provisions of law, and equalized between persons, firms, companies and corporations, and between the different counties of this state, and between the different taxing units and townships, so that equality of taxation and uniformity of administration shall be secured and all taxes shall be collected according to the provisions of law.
      (2) Formulate such rules and processes for the assessment of both real and personal property for purposes of taxation as are best calculated to secure uniform assessment of property of like kind and value in the various taxing units of the state, and relative uniformity between properties of different kinds and values in the same taxing unit. The department of revenue shall furnish to each county assessor a copy of the rules and processes so formulated. The department of revenue may, from time to time, make such changes in the rules and processes so formulated as it deems advisable to accomplish the purpose thereof, and it shall inform all county assessors of such changes.

RCW 84.08.010.

In support of its motion for summary judgment, Plaintiffs have submitted the declaration of Revenue's Deputy Director, Leslie Cushman. Dkt. 48 ("Cushman Decl."). Ms. Cushman declares, in part, as follows:

> In February 2007, Revenue issued a letter determination regarding the applicability of Washington state excise taxes to various elements of CTGW LLC, the joint venture that owns the personal property at issue in [this] lawsuit.
> In making its determination under the federal balancing test, Revenue analyzed state, tribal and federal interests. Based on a review of the tribal, state, and federal interests at issue, Revenue determined that all Washington state sales and use taxes were exempted under the doctrine of federal preemption.
> In early 2008, the Thurston County Assessor's office requested that Revenue render an opinion regarding whether the improvements located at Great Wolf Lodge in Grand Mound, Washington were subject to property taxation.
> On August 28, 2008, Revenue issued an opinion regarding the preemption of the personal property tax under the federal balancing test.
> In making its determination, Revenue analyzed state, tribal and federal interests. The opinion concluded that "it appears that the balance of the federal, state, and tribal interests tilt in favor of federal preemption" with respect to the property owned by CTGW, LLC that is in question in this litigation.

*Id*. ¶¶ 5-9.

Plaintiffs allege that "[i]n 2007, the Thurston County Assessor determined the value of the Improvements for taxation in 2008 as partially completed." Amended Complaint, ¶ 34. Plaintiffs also allege that the assessor "then reduced that value by the Tribe's 51% ownership interest in CTGW, to a 2007 taxable value of $10,115,462, and

ORDER - 5

then assessed CTGW a personal property tax based on the 49% interest of Great Wolf in CTGW." *Id.* On the other hand, Plaintiffs allege that, for the 2008 tax year, the Assessor "has assessed the Improvements at full completion at their full value" and "increased the value of the Improvements for taxation in 2009 to 100%, irrespective of the Tribe's 51% ownership in CTGW." *Id.* ¶ 35.

## III. DISCUSSION

Plaintiffs have alleged a new claim in their complaint that Defendants' failure to follow Revenue's opinion is a violation of both state and federal law. *See supra*. The original complaint, however, involved claims based only on issues of federal law. *See* Dkt. 1. Thus, before reaching the merits of Plaintiffs' summary judgment motion, the Court orders Plaintiffs to show cause, if any they have, why this Court should exert jurisdiction over this new claim. Although Plaintiffs allege that Defendants' failure to follow Revenue's decision is also a violation of "federal preemption law," there has been no showing that a county assessor violates federal preemption law solely by failing to follow a state agency's opinion as to the imposition of a tax. In other words, if Revenue had opined that the tax was not preempted and the assessor refused to impose the tax, it is questionable whether the assessor's action in conflict with Revenue's opinion would raise a federal question invoking this Court's jurisdiction. Therefore, the new claim seems to be purely a matter of state law regarding the authority of the state agency, Revenue, over the Thurston County Assessor.

Plaintiffs bear the burden to show why the Court should assert jurisdiction over this state law claim and why the Court (1) should not abstain from this matter, (2) is not divested from jurisdiction over this matter, or (3) should not decline to exercise supplemental jurisdiction over the new claim pursuant to 28 U.S.C. § 1367(c)(1). For the purposes of clarity, the Court will briefly explain its concerns.

**A.  Abstention**

Under the *Younger* abstention doctrine, a federal court should abstain from hearing a case if the following three criteria are met: (1) state judicial proceedings are ongoing; (2) the state proceedings implicate an important state interest; and (3) the state proceedings offer an adequate opportunity to litigate federal constitutional issues. *Ft. Belknap Indian Cmty. v. Mazurek*, 43 F.3d 428, 431 (9th Cir. 1994), *cert. denied*, 516 U.S. 806 (1995). Abstention, however, is the rare exception to a district court's "virtually unflagging obligation" to exercise jurisdiction. *Id.* at 431.

Defendants argue that Plaintiff CTGW has two available state remedies: (1) it may request a tax exemption under RCW 84.48.010; and (2) it may make a "payment under protest" and then bring a state court action to recover the allegedly unlawful tax pursuant to RCW 8.68.020. Dkt. 13 at 2-3. In the denial of Plaintiffs' motion for a preliminary injunction, the Court dismissed these arguments by stating that "Defendants' argument is unavailing because the current state proceeding neither involves all of the Plaintiffs in this action nor **provides the relief that Plaintiffs are seeking in this action**." Dkt. 24 at 5 (emphasis added). However, if there is an important state interest and an adequate remedy available under state law, namely that the Washington Supreme Court has held that Revenue's opinion is binding on Defendants, then the Court should reevaluate its determination whether abstention is appropriate.

**B.  Tax Injunction Act**

"The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341 ("Tax Injunction Act"). Plaintiffs may show cause, if any they have, why bringing their new state law claim in state court would not result in a plain, speedy and efficient remedy.

## C. Supplemental Jurisdiction

"The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the claim raises a novel or complex issue of State law . . . ." 28 U.S.C. § 1367(c)(1). Plaintiffs may show cause, if any they have, why the Court should not decline to exercise supplemental jurisdiction over their new state law claim.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that Plaintiff may **SHOW CAUSE**, if any they have, as stated herein no later than May 15, 2009 in a brief not to exceed 15 pages. Defendants may respond no later than May 22. 2009, in a brief not to exceed 15 pages. Plaintiffs may reply no later than May 29, 2009, in a brief not to exceed 8 pages.

Plaintiffs' Motion for Summary Judgment (Dkt. 47) is renoted for consideration on the Court's June 18, 2009 calendar.

DATED this 29th day of April, 2009.

BENJAMIN H. SETTLE
United States District Judge