UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THURSTON COUNTY BOARD OF EQUALIZATION, et al., <br><br> Defendants. | CASE NO. C08-5562BHS <br><br> ORDER DISMISSING PLAINTIFFS' FIFTH CLAIM FOR RELIEF AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Plaintiffs' Motion for Summary Judgment Re: Department of Revenue Decision (Dkt. 47) and the Court's Order to Show Cause (Dkt. 56). The Court has considered the pleadings filed in support of and in opposition to the motion, the order to show cause, and the remainder of the file. The Court hereby dismisses Plaintiffs' Fifth Claim for Relief and denies Plaintiffs' Motion for Summary Judgment for the reasons stated herein.

## I. PROCEDURAL BACKGROUND

On September 18, 2008, Plaintiffs Confederated Tribes of the Chehalis Reservation ("Tribe") and CTGW, LLC ("CTGW") filed a complaint against Defendants Thurston County Board of Equalization; equalization board members John Morrison, Bruce Reeves and Joe Simmonds; Thurston County Assessor Patricia Costell; and

Thurston County. Dkt. 1. Plaintiffs alleged that Defendants are violating the U.S. Constitution as well as federal common law by imposing a personalty tax on CTGW's facility, the Great Wolf Lodge. *Id.* ¶ 1.

On October 21, 2008, the Court asserted jurisdiction over this action, declined to abstain from this action, and found that "Plaintiffs, as joined" met a 28 U.S.C. § 1362 exception to the Tax Injunction Act. Dkt. 24 at 4-6. With regard to abstention, the Court stated that the state court action did not "provide the relief that Plaintiffs are seeking in this action" and that "although functionally equivalent, a state tax exemption is not federal immunity from state taxation." *Id.* at 5. With regard to the Tax Injunction Act, the Court found that the Tribe's involvement in this action was a "significant factor" in favor of finding that Plaintiffs met "the [28 U.S.C.] § 1362 exception to the Tax Injunction Act." *Id.*

On March 9, 2009, Plaintiffs filed a First Amended Complaint for Declaratory and Injunctive Relief. Dkt. 46 ("Amended Complaint"). Plaintiffs allege a new claim that reads as follows:

> [The State of Washington Department of Revenue ("Revenue")] has control over Defendants' administration of assessment and tax laws pursuant to RCW 84.08.010, *et seq.*
> Defendants must follow any act, order or direction issued by Revenue as to any matter relating to the administration of the assessment and taxation laws of the State of Washington **pursuant to RCW 84.08.010**, *et seq.*
> Defendant County Assessor Costello sought Revenue's opinion regarding the preemption of the instant personalty tax on the Improvements.
> Revenue issued an opinion that, based on the balance of the federal, state, and Tribal interests at issue, federal law preempted the instant personalty tax on the [hotel, conference center, indoor water park and other improvements ("Improvements")].
> By assessing and attempting to collect the instant personalty tax through distraint of the Improvements, Defendants are in direct conflict with an act, order or direction issued by Revenue.
> Because Defendants must follow, and have no authority to act in conflict with, an act, order or direction of Revenue, their actions regarding the assessment, taxation and distraint of the Improvements **violate state law** and federal preemption law.

*Id.* ¶¶ 56-61 (emphasis added) ("Fifth Claim for Relief").

On March 12, 2009, Plaintiffs filed a Motion for Summary Judgment Re: Department of Revenue Decision. Dkt. 47. Plaintiffs argue that:

> Summary judgment is appropriate because there are no genuine issues of material fact regarding Defendants' failure to comply with an August 2008 decision issued by the Washington State Department of Revenue . . . pursuant to the requirements of state and federal law.

*Id*. at 2. On March 30, 2009, Defendants responded. Dkt. 52. On April 3, 2009, Plaintiffs replied. Dkt. 54.

On April 29, 2009, the Court ordered Plaintiffs to show cause, if any they had, "why the Court (1) should not abstain from this matter, (2) is not divested from jurisdiction over this matter, or (3) should not decline to exercise supplemental jurisdiction over the [Fifth Claim for Relief] pursuant to 28 U.S.C. § 1367(c)(1)." Dkt. 56 at 6. On May 15, 2009, Plaintiffs filed an opening response. Dkt. 57. On May 22, 2009 Defendants responded. Dkt. 58. On May 29, 2009, Plaintiffs replied. Dkt. 60.

## II. FACTUAL BACKGROUND

### A. The Lodge

The Tribe occupies a reservation at the confluence of the Black and Chehalis Rivers in Southwest Washington ("Reservation"). *Confederated Tribes of the Chehalis Indian Reservation v. State of Washington*, 96 F.3d 334, 338 (9th Cir. 1996). The Reservation, which was created by Secretarial Order in 1864, was set aside for "the use and occupation of the Chehalis Indians." 1 Kappler, *Indian Affairs, Laws and Treaties* 901-04 (2d ed. 1904). The Tribe has approximately 800 members, which include persons descended from the Upper Chehalis, the Lower Chehalis, Cowlitz, Satsop, Qualioqua and other aboriginal tribes of Southwest Washington. Dkt. 3, Declaration of Chairman Burnett, ¶ 5 ("Burnett Decl."). The Reservation has a land area of approximately 4,200 acres (about 7.022 square miles) in southeastern Grays Harbor and southwestern Thurston Counties. *Id*.

Approximately five years ago, the Tribe purchased 43 acres near the I-5 freeway, Exit 88, Highway 12, in Grand Mound, WA. Burnett Decl, ¶ 7. That property was

ORDER - 3

subsequently converted to non-contiguous federal trust property and is currently held in trust by the United States for the benefit of the Tribe. *Id.*; *see also id.*, Exh. B at 2.

In 2005, the Tribe and Great Wolf Resorts Inc., a non-Indian corporation with water park expertise, formed CTGW, a limited liability company, under Delaware law, for the purpose of building and owning Great Wolf Lodge Grand Mound ("Lodge"). *Id.* ¶ 8. The Lodge is located on 39 of the 43 acres and consists of the Improvements. *Id.* ¶ 9. The Tribe leases the property to CTGW. *Id.*, Exh A., U.S. Dept. of the Interior Business Development Lease (recorded by the Bureau of Indian Affairs on July 2, 2007) ("Lease"). Under the CTGW operating agreement, the Tribe has a majority "proportionate share" of CTGW's profits of 51%, and Great Wolf receives the remaining 49% of CTGW's profits. Burnett Decl. ¶ 11. Plaintiffs claim that "[u]nder this unique structure, the Tribe is both the owner-lessor of the property and the majority-interest owner of the lessee." Amended Complaint, ¶ 22.

The lease agreement between the Tribe and CTGW contains a provision regarding improvements that reads as follows:

> All buildings and improvements on the Premises shall be owned in fee by the Lessee during the term of this Lease provided that such buildings and improvements (excluding removable personal property and trade fixtures) shall remain on the Premises after the termination of this Lease and shall thereupon become the property of the Lessor.

Burnett Decl., Exh. A, Art. 11.

**B.    State Taxation**

In Washington, "personal property," for purposes of taxation, includes "all improvements upon lands the fee of which is still vested in the United States." RCW 84.04.080. The Washington Administrative Code further defines personal property as including "[a]ll privately owned improvements, including buildings and the like, upon publicly owned lands which have not become part of the realty." WAC 458-12-005. A county may enforce such taxes by placing liens on the assessed improvements and then selling them at a tax sale. RCW 84.60.020.

Revenue exercises general supervision over state taxation and may formulate rules and processes for the assessment of taxes. The Washington statute that grants Revenue these powers reads, in part, as follows:

Revenue shall:

(1) Exercise general supervision and control over the administration of the assessment and tax laws of the state, over county assessors, and county boards of equalization, and over boards of county commissioners, county treasurers and county auditors and all other county officers, in the performance of their duties relating to taxation, and perform any act or give any order or direction to any county board of equalization or to any county assessor or to any other county officer as to the valuation of any property, or class or classes of property in any county, township, city or town, or as to any other matter relating to the administration of the assessment and taxation laws of the state, which, in the department's judgment may seem just and necessary, to the end that all taxable property in this state shall be listed upon the assessment rolls and valued and assessed according to the provisions of law, and equalized between persons, firms, companies and corporations, and between the different counties of this state, and between the different taxing units and townships, so that equality of taxation and uniformity of administration shall be secured and all taxes shall be collected according to the provisions of law.
(2) Formulate such rules and processes for the assessment of both real and personal property for purposes of taxation as are best calculated to secure uniform assessment of property of like kind and value in the various taxing units of the state, and relative uniformity between properties of different kinds and values in the same taxing unit. The department of revenue shall furnish to each county assessor a copy of the rules and processes so formulated. The department of revenue may, from time to time, make such changes in the rules and processes so formulated as it deems advisable to accomplish the purpose thereof, and it shall inform all county assessors of such changes.

RCW 84.08.010.

In support of its motion for summary judgment, Plaintiffs have submitted the declaration of Revenue's Deputy Director, Leslie Cushman. Dkt. 48 ("Cushman Decl."). Ms. Cushman declares, in part, as follows:

In February 2007, Revenue issued a letter determination regarding the applicability of Washington state excise taxes to various elements of CTGW LLC, the joint venture that owns the personal property at issue in [this] lawsuit.
In making its determination under the federal balancing test, Revenue analyzed state, tribal and federal interests. Based on a review of the tribal, state, and federal interests at issue, Revenue determined that all Washington state sales and use taxes were exempted under the doctrine of federal preemption.

ORDER - 5

In early 2008, the Thurston County Assessor's office requested that Revenue render an opinion regarding whether the improvements located at Great Wolf Lodge in Grand Mound, Washington were subject to property taxation.
On August 28, 2008, Revenue issued an opinion regarding the preemption of the personal property tax under the federal balancing test.
In making its determination, Revenue analyzed state, tribal and federal interests. The opinion concluded that "it appears that the balance of the federal, state, and tribal interests tilt in favor of federal preemption" with respect to the property owned by CTGW, LLC that is in question in this litigation.

*Id.* ¶¶ 5-9.

Although Plaintiffs claim that "Revenue determined that the instant tax was federally preempted" (Dkt. 47 at 5), the decision included numerous qualifications. For example, the August 28, 2008 letter reads, in part, as follows:

> In weighing the relative tribal interests and state interests, *it is difficult to say with legal certainty what the appropriate conclusion must be* relative to state taxation of the personal property (improvements) located at Great Wolf.
> ***
> This is a situation that is a matter of "first impression," at least in Washington, and as far as can be determined, in the United States. We have been provided access to the LLC formation agreement, the Management Agreement, and the lease agreement between [Great Wolf Resorts] and the Tribe, and based upon our review of those documents, and upon the representations made by the Tribe, we have reached a conclusion. *Although the relevant facts are still not as clear as we would like, and although a legitimate argument could be made either for federal preemption or for state taxation*, it *appears* that the balance of the federal, state, and tribal interests tilt in favor of federal preemption for this property.

Burnett Decl., Exh. C at 3-4 (emphasis added).

Finally, Plaintiffs allege that "[i]n 2007, the Thurston County Assessor determined the value of the Improvements for taxation in 2008 as partially completed." Amended Complaint, ¶ 34. Plaintiffs also allege that the assessor "then reduced that value by the Tribe's 51% ownership interest in CTGW, to a 2007 taxable value of $10,115,462, and then assessed CTGW a personal property tax based on the 49% interest of Great Wolf in CTGW." *Id*. On the other hand, Plaintiffs allege that, for the 2008 tax year, the Assessor "has assessed the Improvements at full completion at their full value" and "increased the

1 value of the Improvements for taxation in 2009 to 100%, irrespective of the Tribe's 51%
ownership in CTGW." *Id.* ¶ 35.

### III. DISCUSSION

**A.    Jurisdiction**

The Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Court also has supplemental jurisdiction under 28 U.S.C. § 1367(a), which provides, in part, as follows:

> the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

However, a district court may decline to exercise supplemental jurisdiction over a claim if "the claim raises a novel or complex issue of State law [.]" 28 U.S.C. § 1367(c). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under § 1367(c) is discretionary[.]" *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997). The Ninth Circuit has

> emphasize[d] that actually exercising discretion and deciding whether to decline, or to retain, supplemental jurisdiction over state law claims when any factor in subdivision (c) is implicated is a responsibility that district courts are duty-bound to take seriously.

*Id.* at 1001.

In this case, it is undisputed that the Court has original jurisdiction over at least one of Plaintiffs' claims. The Amended Complaint, however, raises the following three issues regarding the Court's jurisdiction over all of Plaintiffs' claims:

1.    Whether Plaintiffs' Fifth Claim for Relief states a federal cause of action that the Court has original jurisdiction over;

2.    If not, whether the Court has supplemental jurisdiction over the claim because it forms part of the same case or controversy as the asserted federal claims; and

ORDER - 7

3. If judicial power exists under § 1367(a), whether the Court should decline to exercise supplemental jurisdiction over the claim under § 1367(c).

### 1. Federal Question Jurisdiction

Plaintiffs argue that their "amended complaint alleges that the tax at issue is illegal because it violates *federal law*." Dkt. 57 at 2 (emphasis in original). Defendants counter that "Plaintiffs go to great lenghts in an attempt to create an aspect of federal law in their new claim," but the claim "clearly asserts a violation of state law." Dkt. 58 at 2. The Court agrees.

Plaintiffs assert that "Defendants are violating <u>federal</u> law by failing to follow the direction of Revenue because federal law mandates a *Bracker* analysis." Dkt. 60 at 2 (emphasis in original). Although Plaintiffs consistently argue that a *Bracker* analysis is mandated before a state may impose a tax on Indian land or tribal members, they fail to cite any authority for this proposition. *See* Dkt. 47 at 4, 6, 8, 14, and 17; Dkt. 54 at 2 and 7-8; Dkt. 57 at 1, 3 and 4; Dkt. 60 at 1-2. In other words, Plaintiffs have set forth a hypothetical procedural course that mandates that some entity must perform a *Bracker* analysis before a state may exercise its regulatory authority, yet Plaintiffs have failed to cite any authority that requires this specific procedure. Moreover, the Court is unaware of any authority that supports Plaintiffs' proposition.

In *Bracker*, the Supreme Court stated that:

> Congress has broad power to regulate tribal affairs under the Indian Commerce Clause, Art. 1, § 8, cl. 3. This congressional authority and the "semi-independent position" of Indian tribes have given rise to two independent but related barriers to the assertion of state regulatory authority over tribal reservations and members. First, the exercise of such authority **may** be pre-empted by federal law. Second, it **may** unlawfully infringe "on the right of reservation Indians to make their own laws and be ruled by them." The two barriers are independent because either, standing alone, can be a sufficient basis for holding state law inapplicable to activity undertaken on the reservation or by tribal members. They are related, however, in two important ways. The right of tribal self-government is ultimately dependent on and subject to the broad power of Congress. Even so, traditional notions of Indian self-government are so deeply engrained in our jurisprudence that they have provided an important "backdrop," against which vague or ambiguous federal enactments must always be measured.

ORDER - 8

*Bracker*, 448 U.S. at 142 (internal citations omitted). Implicit in this statement is the procedure that the state acts first by asserting regulatory authority and then the court is called upon to determine whether there is an applicable barrier to that authority. There is no mention of any government entity passing upon the federal balancing test before an assertion of regulatory authority. The Court is unpersuaded by Plaintiffs' arguments to the contrary.

Stripped of the allegation that Defendants violated federal law by imposing its regulatory authority without completing a *Bracker* analysis, Plaintiffs' Fifth Claim for Relief does not arise under the "Constitution, laws, or treaties of the United States." As Plaintiffs argue in their summary judgment briefing, their claim is that Defendants' tax "violates state law, because Revenue determined that the tax violates federal law and the Assessor has failed to heed that determination." Dkt. 54 at 10.

Therefore, the Court finds that Plaintiffs' Fifth Claim for Relief does not state a violation of federal law and does not implicate the Court's original jurisdiction. The Court must now determine whether it should assert supplemental jurisdiction over the claim.

**2.    § 1367(a)**

A state law claim is part of the same case or controversy when it shares a "common nucleus of operative fact" with the federal claims and the state and federal claims would normally be tried together. *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004)

In this case, Defendants argue that the Court does not have supplemental jurisdiction over Plaintiffs' Fifth Claim for Relief. Specifically, Defendants argue that:

> The pertinent facts in the [Fifth Claim for Relief] concern whether Revenue issued an act, order or direction that was binding and, if binding, whether the Assessor followed the act, order, or direction. These facts are entirely distinct from the claims in Plaintiffs' initial complaint as to who owns the improvements at the Great Wolf Lodge; whether the improvements are permanent; and the tribal, state, and federal interests to be balanced in applying a *Bracker* analysis. The distinct nature of the state law claim

establishes there is no nucleus of facts common to the state and federal claims that would support the Court's exercise of supplemental jurisdiction.

Dkt. 58 at 5. The Court agrees.

The Fifth Claim for Relief is based on two operative facts: (1) Revenue issued an advisory decision on the possible assertion of regulatory authority, and (2) the Thurston County Assessor did not follow that decision. Under RCW 84.08.010, the outcome of Revenue's decision is irrelevant as the alleged violation arises from the failure to follow that decision.

Therefore, the Court finds that Plaintiffs have failed to show that the Court has supplemental jurisdiction over their Fifth Claim for Relief because it does not involve a common nucleus of operative fact with Plaintiffs' other claims for relief.

### 3. § 1367(c)

Even if the Court has supplemental jurisdiction over Plaintiffs' Fifth Claim for relief, the Court must still consider whether to decline to exercise such jurisdiction because the claim raises novel and complex issues of state law. A district court does not abuse its discretion by declining to exercise supplemental jurisdiction over a claim that would require an "uncertain" application of a state statute. *See Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d 1022, 1034 (9th Cir. 2005) ("While the [state] statute may not be complex on its face, the application of the law in these circumstances is uncertain.").

In this case, Plaintiffs request a unique application of RCW 82.08.010. Although Plaintiffs argue that the "issue of Revenue's plenary authority over the Assessor . . . has been tried multiple times in state court and resolved," the Court is not persuaded that the issue presented to the Court has even been addressed by a Washington state court. Plaintiffs cite three Washington cases in support of their position: *State ex rel. Barlow v. Kinnear*, 70 Wn.2d 482 (1967), *Boeing Co. v. King County*, 75 Wn.2d 160, 165 (1969), and *Ridder v. Dep't of Revenue*, 43 Wn. App. 21, 28 (1986). This case, however, is factually distinguishable on the ground that the Assessor sought an "opinion" and

ORDER - 10

Revenue issued a "decision," which included numerous qualifications. Whether the Assessor violates Washington law by not acting in conformity with Revenue's decision is a novel, and arguably complex, issue of state law.

Therefore, even if the Court has supplemental jurisdiction under § 1367(a), the Court declines to exercise supplemental jurisdiction under § 1367(c) over Plaintiffs' Fifth Claim for Relief.

### 4. Conclusion on Jurisdiction

The Court dismisses Plaintiffs' Fifth Claim for relief because it either does not have or declines to exercise supplemental jurisdiction over the claim.

## B. Summary Judgment

Plaintiffs' first claim for relief alleges that "Permanent improvements to tribal trust property are not subject to state taxation." Complaint, ¶ 42. Plaintiffs moved for summary judgment on this issue. Dkt. 47 at 14-16.

### 1. Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

### 2. Plaintiff's Motion

Plaintiffs argue that "Permanent improvements to land held in trust by the United States for the benefit of a tribe are not subject to state personal property taxes." Dkt. 47 at 14 (citing *U.S. v. Rickert*, 188 U.S. 432, 442 (1903)). In *Rickert*, the Attorney General of the United States instituted an action to restrain the collection of taxes by the county of Roberts, South Dakota. *Id*. at 432. The county had assessed taxes for "certain permanent improvements on, and personal property used in the cultivation of, lands in that county occupied by members of the Sisseton band of Sioux Indians . . . ." *Id*. The permanent improvements consisted of a "large frame house and barn attached thereto" and the personal property consisted of "horses, one cow, and two wagons . . . ." *Id*. at 433. The land upon where this property was located was held in trust by the United States and was allotted to Charles R. Crawford, an Indian and member of the Sisseton band. *Id*.

In answering whether the permanent improvements were subject to assessment and taxation, the Supreme Court reasoned as follows:

> Looking at the object to be accomplished by allotting Indian lands in severalty, it is evident that Congress expected that the lands so allotted would be improved and cultivated by the allottee. But that object would be defeated if the improvements could be assessed and sold for taxes. The improvements to which the question refers were of a permanent kind. While the title to the land remained in the United States, the permanent improvements could no more be sold for local taxes than could the land to which they belonged. Every reason that can be urged to show that the land was not subject to local taxation applies to the assessment and taxation of the permanent improvements.
> It is true that the statutes of South Dakota, for the purposes of taxation, classify 'all improvements made by persons upon lands held by them under the laws of the United States' as personal property. But that classification cannot apply to permanent improvements upon lands allotted to and occupied by Indians, the title to which remains with the United States, the occupants still being wards of the nation, and as such under its complete authority and protection. The fact remains that the improvements here in question are essentially a part of the lands, and their use by the Indians is necessary to effectuate the policy of the United States.

*Id*. at 442-43.

In answering whether the personal property was subject to assessment and taxation, the Supreme Court reasoned as follows:

> The answer to this question is indicated by what has been said in reference to the assessment and taxation of the land and the permanent improvements thereon. The personal property in question was purchased with the money of the government, and was furnished to the Indians in order to maintain them on the land allotted during the period of the trust estate, and to induce them to adopt the habits of civilized life. It was, in fact, the property of the United States, and was put into the hands of the Indians to be used in execution of the purpose of the government in reference to them. The assessment and taxation of the personal property would necessarily have the effect to defeat that purpose.

*Id*. at 443-44.

In this case, the Court is not persuaded that the rule of *Rickert* applies to bar the taxation in question because this case involves a significantly different factual scenario. Although the site in Grand Mound is held in trust by the United States for the benefit of the Tribe, the Lessee, CTGW, owns the improvements in fee during the terms of the Lease. Moreover, it cannot be said that the improvements are "occupied" by the Tribe as CTGW currently uses the improvements to operate a hotel, conference center, and indoor water park. Therefore, the *Rickert* rule that was implemented to protect a homestead and associated livestock is, in this Court's opinion, inapplicable to privately owned

commercial business ventures even though the improvements are on land held in trust by the United States.

Plaintiffs also argue that taxes may not be levied against the Improvements because, if CTGW did not pay those taxes, Defendants would seize and sell the Improvements, "pervert[ing] the purpose of holding property in trust for the benefit of [the Tribe.]" Dkt. 54 at 9. Although neither party brought this to the Court's attention, the Lease specifically provides that the Lessee, CTGW, is responsible for all taxes and/or liens resulting therefrom. *See* Lease, Art. 26. In fact, CTGW is contractually bound to

> protect and hold harmless the Lessor, the United States and the leased premises and all interest therein and improvements thereon from any and all claims, taxes, assessments and like charges and from any lien there from [sic] or sale or other proceedings to enforce payment thereof, and all costs in connection therewith.

*Id*. In light of this provision, the Court is not persuaded that the Tribe would experience a reduction in the benefit of the trust if CTGW failed to pay taxes that were properly due.

Therefore, the Court denies Plaintiffs' motion for summary judgment on this issue because Plaintiffs have failed to show that they are entitled to judgment as a matter of law that the state is barred from taxing the Improvements on the property held in trust by the United States for the benefit of the Tribe.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that Plaintiffs' Fifth Claim for Relief is **DISMISSED** because the Court either does not have, or declines to exercise, supplemental jurisdiction over the claim, and Plaintiffs' Motion for Summary Judgment (Dkt. 47) is **DENIED** because Plaintiffs have failed to show that they are entitled to judgment as a matter of law.

DATED this 2nd day of July, 2009.

BENJAMIN H. SETTLE
United States District Judge