UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THURSTON COUNTY BOARD OF EQUALIZATION, et al., <br><br> Defendants. | CASE NO. C08-5562BHS <br><br> ORDER ON JOINT SUBMISSION |

This matter comes before the Court on the parties' CR 37 Joint Submission (Dkt. 84). In that submission, Plaintiffs include a motion to compel, Defendants include a motion for protective order, and both parties seek reasonable expenses and attorneys' fees. *Id*. The Court has considered the submission and the remainder of the file and hereby denies the motions for the reasons stated herein.

## I. PROCEDURAL BACKGROUND

On September 18, 2008, Plaintiffs Confederated Tribes of the Chehalis Reservation ("Tribe") and CTGW, LLC ("CTGW") filed a complaint against Defendants Thurston County Board of Equalization ("Equalization"); Equalization board members John Morrison, Bruce Reeves and Joe Simmonds; Thurston County Assessor Patricia Costell; and Thurston County. Dkt. 1. Plaintiffs alleged that Defendants are violating the U.S. Constitution as well as federal common law by imposing a personalty tax on

CTGW's facility, the Great Wolf Lodge. *Id.* ¶ 1. On March 9, 2009, Plaintiffs filed a First Amended Complaint for Declaratory and Injunctive Relief. Dkt. 46 ("Amended Complaint").

On October 9, 2009, the parties filed a CR 37 Joint Submission. Dkt. 84.

## II. FACTUAL BACKGROUND

### A. The Lodge

The Tribe occupies a reservation at the confluence of the Black and Chehalis Rivers in Southwest Washington ("Reservation"). *Confederated Tribes of the Chehalis Indian Reservation v. State of Washington*, 96 F.3d 334, 338 (9th Cir. 1996). The Reservation, which was created by Secretarial Order in 1864, was set aside for "the use and occupation of the Chehalis Indians." 1 Kappler, *Indian Affairs, Laws and Treaties* 901-04 (2d ed. 1904). The Tribe has approximately 800 members, which include persons descended from the Upper Chehalis, the Lower Chehalis, Cowlitz, Satsop, Qualioqua and other aboriginal tribes of Southwest Washington. Dkt. 3, Declaration of Chairman Burnett, ¶ 5 ("Burnett Decl."). The Reservation has a land area of approximately 4,200 acres (about 7.022 square miles) in southeastern Grays Harbor and southwestern Thurston Counties. *Id*.

Approximately five years ago, the Tribe purchased 43 acres near the I-5 freeway, Exit 88, Highway 12, in Grand Mound, WA. Burnett Decl, ¶ 7. That property was subsequently converted to non-contiguous federal trust property and is currently held in trust by the United States for the benefit of the Tribe. *Id*.; *see also id*., Exh. B at 2.

In 2005, the Tribe and Great Wolf Resorts Inc. ("Great Wolf"), a non-Indian corporation with water park expertise, formed CTGW, a limited liability company, under Delaware law, for the purpose of building and owning Great Wolf Lodge Grand Mound ("Lodge"). *Id*. ¶ 8. The Lodge is located on 39 of the 43 acres and consists of the Improvements. *Id*. ¶ 9. The Tribe leases the property to CTGW. *Id*., Exh A., U.S. Dept. of the Interior Business Development Lease (recorded by the Bureau of Indian Affairs on

July 2, 2007) ("Lease").  Under the CTGW operating agreement, the Tribe has a majority "proportionate share" of CTGW's profits of 51%, and Great Wolf receives the remaining 49% of CTGW's profits.  Burnett Decl. ¶ 11.  Plaintiffs claim that "[u]nder this unique structure, the Tribe is both the owner-lessor of the property and the majority-interest owner of the lessee."  Amended Complaint, ¶ 22.

The Lease between the Tribe and CTGW contains a provision regarding improvements that reads as follows:

> All buildings and improvements on the Premises shall be owned in fee by the Lessee during the term of this Lease provided that such buildings and improvements (excluding removable personal property and trade fixtures) shall remain on the Premises after the termination of this Lease and shall thereupon become the property of the Lessor.

Lease, Art. 11.

**B.  State Taxation**

In Washington, "personal property," for purposes of taxation, includes "all improvements upon lands the fee of which is still vested in the United States."  RCW 84.04.080.  The Washington Administrative Code further defines personal property as including "[a]ll privately owned improvements, including buildings and the like, upon publicly owned lands which have not become part of the realty."  WAC 458-12-005.  A county may enforce such taxes by placing liens on the assessed improvements and then selling them at a tax sale.  RCW 84.60.020.

The Washington Department of Revenue ("Revenue") exercises general supervision over state taxation and may formulate rules and processes for the assessment of taxes. The Washington statute that grants Revenue these powers reads, in part, as follows:

> Revenue shall:
>
>   (1) Exercise general supervision and control over the administration of the assessment and tax laws of the state, over county assessors, and county boards of equalization, and over boards of county commissioners, county treasurers and county auditors and all other county officers, in the performance of their duties relating to taxation, and perform any act or give any order or direction to any county board of equalization or to any county

ORDER - 3

assessor or to any other county officer as to the valuation of any property, or class or classes of property in any county, township, city or town, or as to any other matter relating to the administration of the assessment and taxation laws of the state, which, in the department's judgment may seem just and necessary, to the end that all taxable property in this state shall be listed upon the assessment rolls and valued and assessed according to the provisions of law, and equalized between persons, firms, companies and corporations, and between the different counties of this state, and between the different taxing units and townships, so that equality of taxation and uniformity of administration shall be secured and all taxes shall be collected according to the provisions of law.
 (2) Formulate such rules and processes for the assessment of both real and personal property for purposes of taxation as are best calculated to secure uniform assessment of property of like kind and value in the various taxing units of the state, and relative uniformity between properties of different kinds and values in the same taxing unit. The department of revenue shall furnish to each county assessor a copy of the rules and processes so formulated. The department of revenue may, from time to time, make such changes in the rules and processes so formulated as it deems advisable to accomplish the purpose thereof, and it shall inform all county assessors of such changes.

RCW 84.08.010.

In support of an earlier motion, Plaintiffs submitted the declaration of Revenue's Deputy Director, Leslie Cushman. Dkt. 48 ("Cushman Decl."). Ms. Cushman declared, in part, as follows:

> In February 2007, Revenue issued a letter determination regarding the applicability of Washington state excise taxes to various elements of CTGW LLC, the joint venture that owns the personal property at issue in [this] lawsuit.
> In making its determination under the federal balancing test, Revenue analyzed state, tribal and federal interests. Based on a review of the tribal, state, and federal interests at issue, Revenue determined that all Washington state sales and use taxes were exempted under the doctrine of federal preemption.
> In early 2008, the Thurston County Assessor's office requested that Revenue render an opinion regarding whether the improvements located at Great Wolf Lodge in Grand Mound, Washington were subject to property taxation.
> On August 28, 2008, Revenue issued an opinion regarding the preemption of the personal property tax under the federal balancing test.
> In making its determination, Revenue analyzed state, tribal and federal interests. The opinion concluded that "it appears that the balance of the federal, state, and tribal interests tilt in favor of federal preemption" with respect to the property owned by CTGW, LLC that is in question in this litigation.

*Id*. ¶¶ 5-9.

ORDER - 4

Although Plaintiffs claim that "Revenue determined that the instant tax was federally preempted" (Dkt. 47 at 5), the decision included numerous qualifications. For example, the August 28, 2008 letter reads, in part, as follows:

> In weighing the relative tribal interests and state interests, *it is difficult to say with legal certainty what the appropriate conclusion must be* relative to state taxation of the personal property (improvements) located at Great Wolf.
>
> ***
>
> This is a situation that is a matter of "first impression," at least in Washington, and as far as can be determined, in the United States. We have been provided access to the LLC formation agreement, the Management Agreement, and the lease agreement between [Great Wolf Resorts] and the Tribe, and based upon our review of those documents, and upon the representations made by the Tribe, we have reached a conclusion. *Although the relevant facts are still not as clear as we would like, and although a legitimate argument could be made either for federal preemption or for state taxation*, it *appears* that the balance of the federal, state, and tribal interests tilt in favor of federal preemption for this property.

Burnett Decl., Exh. C at 3-4 (emphasis added).

Plaintiffs allege that "[i]n 2007, the Thurston County Assessor determined the value of the Improvements for taxation in 2008 as partially completed." Amended Complaint, ¶ 34. Plaintiffs also allege that the assessor "then reduced that value by the Tribe's 51% ownership interest in CTGW, to a 2007 taxable value of $10,115,462, and then assessed CTGW a personal property tax based on the 49% interest of Great Wolf in CTGW." *Id*. On the other hand, Plaintiffs allege that, for the 2008 tax year, the Assessor "has assessed the Improvements at full completion at their full value" and "increased the value of the Improvements for taxation in 2009 to 100%, irrespective of the Tribe's 51% ownership in CTGW." *Id*. ¶ 35.

**C.     Discovery**

During discovery, Plaintiffs conducted depositions of (1) the Thurston County Assessor, Ms. Costello; (2) the Thurston County Chief Appraiser, Gene Widmer; and (3) the Deputy Assessor, Dennis Pulsipher. Dkt. 84 at 6-10. Defendants disclosed multiple emails which are summarized as follows:

> Emails of December 7, 2007 from Thurston County Deputy Prosecuting Attorney Scott Cushing to Mr. Pulsipher and Thurston County Deputy

1    Prosecuting Attorney Jane Futterman (*see* Dkt. 85, Declaration of Gabriel
     S. Galanda ("Galanda Decl."), Exh. 4);

     Email of December 28, 2007 from Ms. Costello to Mr. Pulsipher and Ms.
     Futterman (*Id*., Exh 5);

     Email of December 26, 2007 from Mr. Pulsipher to Mr. Cushing, Ms.
     Futterman, Mr. Widmer, and others (*Id*., Exh. 6);

     Email of December 12, 2007 from Mr. Pulsipher to Ms. Costello, Mr.
     Cushing, Ms. Futterman, Mr. Widmer, and others (*Id*., Exh. 7);

     Email of October 9, 2007 from Ms. Costello to Ms. Futterman (*Id*., Exh. 8);

     Email of October 11, 2007 from Mr. Pulsipher to Ms. Constello (*Id*., Exh.
     9);

     Email of August 26, 2008 from Mr. Cushing to Mr. Pulsipher (*Id*., Exh. 10);

     Email of August 1, 2007 from Mr. Pulsipher to Ms. Futterman (*Id*., Exh
     11); and

     Email of August 2, 2007 from Mr. Pulsipher to Ms. Futterman (*Id*., Exh
     12);

Dkt. 84 at 11-13.

Plaintiffs claim that they served subpoena duces tecums on Commissioners Romero, Valenzuela and Wolfe. Galanda Decl., ¶ 18. Plaintiffs also claim that Defendants withheld documents related to these subpoenas and that Defendants have produced a privilege log regarding the withheld documents. *Id*.

Finally, Plaintiffs claim that they served First Requests for Production on Defendants and that Defendants objected. Dkt. 84 at 27. The relevant requests and objections are as follows:

   REQUEST FOR PRODUCTION NO.1: All documents relating to property,
   real or personal, or improvements owned or leased by CTGW, LLC
   including but not limited to Great Wolf Lodge Grand Mound, or the
   taxation, valuation, or assessment thereof.

   RESPONSE: OBJECTION: This request . . . seeks records that are
   attorney-client privileged and attorney work product. (See Privilege Log
   attached hereto. . . .)

   REQUEST FOR PRODUCTION NO.2: All written or recorded
   communications in any form, including electronic, made to or by any
   person employed by Thurston County or the Thurston County Assessor's

ORDER - 6

1  Office relating to the taxation, valuation, or assessment of property, real or
   personal, or improvements owned or leased by CTGW, LLC.

   RESPONSE: OBJECTION: This request . . . seeks records that are
   attorney-client privileged and attorney work product. (See Privilege Log.)

Dkt. 84 at 27.

### III. DISCUSSION

The parties may submit an unresolved discovery dispute to the Court as a "Joint Submission." Local Rule CR 37(B). In this case, the parties have submitted an unresolved discovery dispute regarding numerous documents and categories of documents. Plaintiffs request an order compelling production of these document and/or categories of material and Defendants request a protective order. Dkt. 84.

Plaintiffs assert that "Defendants waived the attorney-client privilege, if it existed at all, by placing privileged material at issue in this suit and by disclosing privileged communications in deposition testimony and discovery."

Dkt. 84 at 1. Defendants counter that

> Attorney-client and work product privileges/protections are well recognized by courts in the 9th Circuit in the government context.
> ***
> Plaintiffs claim that that [sic] all Defendants have "unequivocally" waived all protections of work product and attorney-client privileged material, and ask for a blanket order requiring production of Defendants' attorney client privilege and work product materials, including an order granting the Plaintiffs unfettered authority to depose the Defendants' elected officials and employees regarding subject matters for which the Defendants claim attorney-client privilege and work product protection. Plaintiffs also assert they are entitled to an order requiring Defendants to "comply with subpoenas" without any giving any indication as to which subpoenas or how they have not been complied with.

*Id*. at 2-3.

Although Plaintiffs argue that "the Ninth Circuit has never held that a governmental attorney-client privilege exists," Dkt. 84 at 2, they do not ask the Court to answer the question of whether such privilege exists. Instead, Plaintiffs claim that

> [r]egardless of whether any privilege existed between Defendants and the Thurston County Prosecutor's Office, ample evidence proves that Defendants unequivocally waived any attorney-client/work-product protections regarding the tax and litigation at issue here.

ORDER - 7

*Id*. Therefore, the Court will assume that the material is privileged and only address the issue of waiver.

The attorney-client privilege is not absolute. *Gomez v. Vernon*, 255 F.3d 1118, 1131 (9th Cir. 2001). "The privilege may be waived by the client either implicitly, by placing privileged matters in controversy, or explicitly, by turning over privileged documents." *Id*. at 1132. In this case, Plaintiffs argue that Defendants have both implicitly and explicitly waived any privilege. Dkt. 84 at 5-13.

**A.    Implicit Waiver**

The Ninth Circuit employs a three-pronged test to determine whether an implicit waiver has been effected: (1) whether the party is asserting the privilege as the result of some affirmative act, such as filing suit; (2) whether through this affirmative act, the asserting party puts the privileged information at issue; and (3) whether allowing the privilege would deny the opposing party access to information vital to its defense. *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999) (internal citation and quotations omitted). The Court will apply this test to the facts of the instant dispute.

First, Plaintiffs have failed to address the first prong of the test. They do not state how Defendants asserted the privilege as the result of some affirmative act, such as asserting an affirmative defense or filing a counterclaim. Plaintiffs, however, do argue that Defendants have placed "'advice of counsel' at the center of this litigation." Dkt. 84 at 7. The record lacks support for this proposition. The only evidence before the Court is that the Assessor sought legal advice before assessing the tax in question. It is doubtful that this act is sufficient to support the finding of an "affirmative act."

Second, it is doubtful that the privileged information is "at issue" because there is no correlation between the legal advice in question and the claims in the complaint. Plaintiffs argue that they have alleged "that the assessed tax is preempted by federal law, and that the Assessor's Office has acted ultra vires – i.e., arbitrarily and capriciously – in assessing the tax against Plaintiffs." Dkt. 84 at 9. Plaintiffs fail to explain how the advice

of a county prosecutor's office is relevant to the issue of whether a state tax is preempted by federal law. With regard to Plaintiffs' untra vires claim, they have alleged as follows:

> Defendants have acted ultra vires by: (1) disregarding both CTGW as an entity and its undivided fee ownership of the Improvements; (2) apportioning ownership interests between members in contravention of CTGW's governing documents; and (3) assessing a tax based upon an unsupported and baseless percentage of each member's ownership.

Dkt. 46, ¶ 55. Defendants argue that "defense of [this] claim will rest on whether the Assessor had authority to assess the property. This requires an analysis of the law, not what advice the Assessor may or may not have obtained from her legal counsel." Dkt. 84 at 16. The Court agrees and does not find that the legal advice in question is "at issue" in this litigation.

Third, the Court does not find that the legal advice in question is vital to Plaintiffs' case. At this point, it seems that the issues of whether the state tax is preempted and whether the government agency acted ultra vires, i.e. exceeding its authority, are issues of law that can be litigated without disclosing the county prosecutor's advice.

Therefore, the Court denies Plaintiffs' motion to compel on the issue of whether Defendants have implicitly waived any privilege.

**B.    Explicit Waiver**

Under the Federal Rules of Evidence, if a party waives an attorney-client or work-product privilege, then that waiver extends to undisclosed communications or information "only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." Fed. R. Evid. 502(a). "[S]ubject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner." *Id.*, Advisory Committee Notes.

In this case, Plaintiffs argue that Defendants intentionally waived their right to privilege by revealing privileged communications in the deposition of Mr. Widmer, in the deposition of the Assessor, in the deposition of Mr. Pulsipher, and in numerous emails

that have been turned over during discovery. Dkt. 84 at 9-13. With regard to the depositions, Defendants counter that the "divulged limited privileged information . . . do[es] not operate as a blanket waiver of privilege." *Id.* at 17. The Court agrees. The record does not reflect that Defendants have intentionally put this information into the litigation in either a misleading or unfair manner.

With regard to the emails, Defendants argue that only one of the emails contains privileged material. After review of the record, the Court agrees. The single email exchange was between Mr. Pulsipher and Mr. Cushing and reads, in relevant part, as follows:

> Dennis,
> The other day when we had our meeting on this issue you told me that your appraisers determined the assessed value of the [Great Wolf] property via comps from around the nation, but not necessarily based on "on the ground" research of the property.
> Could you provide us with the documentation that your appraiser used to arrive at this assessed value? We need it for the facts section of our response brief.
> Thanks,
> Scott

Galanda Decl., Exh. 10. Mr. Pulsipher's response was as follows: "I am presuming that you mean the appraisal analysis that set the 2007 assessment year value that is under appeal at the [Board of Equalization]." *Id.* Mr. Cushing responded in the affirmative. *Id.* Defendant concedes that this email was intentionally disclosed. Dkt. 84 at 18. But, there is no material before the Court, or request for specific material, upon which the Court may balance whether it "concern[s] the same subject matter" and whether "they ought in fairness to be considered together." Fed. R. Evid. 502(a). In other words, the Court is hesitant to grant a blanket waiver but will consider a motion to compel documents that pertain to this subject matter, are listed on a privilege log, and remain undisclosed.

The remainder of Plaintiffs' motion is voluntarily stricken (Dkt. 84 at 24-26) and based on the faulty presumption that Defendants have waived privilege to other subject matters (Dkt. 84 at 26-28). The Court denies the portion regarding Defendants' waiver.

ORDER - 10

Defendants have requested that the Court enter a protective order. Dkt. 84 at 28. The Court denies this request because a protective order is unnecessary.

Finally, with regard to fees, Plaintiffs are not awarded fees because Defendants' failure to disclose, if any, was based on issues of privilege and was substantially justified. Defendants are not entitled to fees because the request for a protective order was denied.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that Plaintiffs' motions to compel and Defendants' motion for a protective order (Dkt. 84) are **DENIED** as stated herein.

DATED this 12th day of November, 2009.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 11