BENJAMIN H. SETTLE

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, et al.,

Plaintiffs,

v.

THURSTON COUNTY BOARD OF EQUALIZATION, et al.,

Defendants.

No. C08 5562 BHS

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**Note on Motion Docket: January 22, 2010**

## I. INTRODUCTION

Defendants Thurston County, Thurston County Assessor, and Thurston County Treasurer move this court pursuant to Fed. R. Civ. P. 56(a) for an order of summary judgment dismissing Plaintiffs' claims. Plaintiffs brought this action for declaratory and injunctive relief alleging that the property tax assessment on the improvements at the Great Wolf Lodge violates, and is preempted by, federal law. On March 9, 2009, Plaintiffs filed their First Amended Complaint for Declaratory and Injunctive Relief asserting five claims. On July 2, 2009, the Court dismissed Plaintiffs' fifth claim.

Summary judgment should be granted on Plaintiffs' remaining claims because, drawing all justifiable inferences in favor of the nonmoving party, there is no genuine issue as to any material facts and the Defendants are entitled to judgment as a matter of law.[1] In the instant motion only the ultimate

[1] Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505 (1986).

EDWARD G. HOLM
Thurston County Prosecuting Attorney
Civil Division
2424 Evergreen Park Dr. SW, Suite 102
Olympia, WA 98502
360/786-5574 FAX 360/709-3006

inferences and the legal consequences are in dispute.[2] As the dispute relates to the legal significance of undisputed facts, the controversy collapses into a question of law suitable to disposition on summary judgment.[3] The facts show that the property tax assessment on the Great Wolf Lodge improvements is a valid exercise of state taxing authority and not preempted by federal law.

## II. FACTS

Approximately six years ago, the Confederated Tribes of the Chehalis Reservation ("Tribe") purchased 43 acres in Grand Mound, Washington.[4] The property was subsequently converted to non-contiguous federal trust property and is currently held in trust by the United States for the benefit of the Tribe.[5] In 2005, the Tribe and Great Wolf Resorts, Inc. (a nonIndian, publicly-traded, for-profit Delaware corporation)[6], through its wholly-owned subsidiary Great Wolf Lodge of Chehalis, LLC ("GWR") itself a nonIndian corporation[7] with water park expertise, formed a limited liability company, CTGW, LLC, ("CTGW") under Delaware law,[8] for the purpose of building and owning Great Wolf Lodge at Grand Mound ("Great Wolf Lodge"), which is a $100 to $110 million project.[9] The Great Wolf Lodge is a 398 hotel, conference center, indoor water park and other improvements ("Improvements")[10] located on 39 of the 43 acres that are held in trust for the Tribe ("Land").[11]

The Lodge draws in excess of 400,000 guests,[12] nearly all of whom travel to and from the Lodge on roads through Thurston County.[13] The Great Wolf Lodge is bordered by Old Highway 99, a

---

[2] *Suzy's Zoo v. Comm'r of Internal Revenue*, 273 F.3d 875, 878 (9th Cir. 2001) ("A mixed question of law and fact exists when primary facts are undisputed and ultimate inferences and legal consequences are in dispute.").
[3] *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1523 (9th Cir. 1994).
[4] Dkt. 3 ¶ 7.
[5] *Id.*; *see also id.*, Exh. B at 2.
[6] Dkt. 1 ¶ 13; Dkt 15-2 (Futterman declaration, Exhibit A)
[7] Dkt 15, Exhibit A.
[8] Dkt. 46 ¶ 5.
[9] Dkt. 3 ¶ 8; Dkt. 3. at Exhibit B p. 2.
[10] *Id.* ¶ 9, Exhibit B.
[11] *Id.* ¶ 9.
[12] Dkt. 15-3 (Futterman declaration, at Exhibit B).
[13] Derek Kinzel, General Manager at Great Wolf Lodge, Deposition ("Kinzel dep.") 18:9-19, Dec of Cushing, Ex. 3.

EDWARD G. HOLM
Thurston County Prosecuting Attorney
Civil Division
2424 Evergreen Park Dr. SW, Suite 102
Olympia, WA 98502
360/786-5574 FAX 360/709-3006

Thurston County road.[14] In addition to the hotel, the conference center has 12 rooms ranging from a capacity of 10 to 1,050.[15]

The Tribe has approximately 820 members, close to 300 of whom are 18 and under.[16] Although the number of Chehalis Tribal members working at the Great Wolf Lodge has fluctuated, the number of members employed at the Great Wolf Lodge has been as high as eight[17] and as low as three[18] out of a total of over 500 employees.[19] Great Lakes Services, LLC ("GLS"), an "indirect wholly owned subsidiary of Great Wolf Resorts, Incorporated[,]"[20] manages the Great Wolf Lodge.[21]

The Tribe leases the Land to CTGW for a 25-year term, with a 25-year option to renew.[22] CTGW owns the Improvements in fee during the Lease term and, upon the Lease's expiration or termination, the Improvements shall remain on the Land.[23] Under the CTGW LLC Agreement, the Tribe has a 51 percent "proportionate share" of CTGW's profits and losses and GWR has a 49 percent "proportionate share" of CTGW's profits and losses.[24]

CTGW is an investment for the Tribe in that the Tribe receives 51 percent of net profits and is responsible for 51 percent of net losses.[25] Although the gross revenues from the Great Wolf Lodge were

---

[14] Dkt. 46 ¶ 26; Brent Payton, Thurston County Public Works Department, Deposition ("Payton Dep.") 46:2-7, Dec of Cushing, Ex. 14.
[15] Great Wolf Lodge Grand Mound Meetings & Groups – Great Wolf Resorts, http://www.greatwolf.com/grandmound/groups/overview (last visited December 29, 2009).
[16] David Burnett, Chairman for the Confederated Tribes of the Chehalis Reservation, Deposition ("Burnett dep.") 174:18-19, Dec of Cushing, Ex. 1.
[17] *Id.* at 37:7-23 (Dec of Cushing, Ex. 1).
[18] Spreadsheet of Great Wolf Lodge employees (Dec of Cushing, Exhibit 33).
[19] *Id.*; Kinzel dep. 50:22-51:3, Dec of Cushing, Ex. 3.
[20] James Calder, Chief Financial Officer for CTGW, Deposition ("Calder dep.") 12:2-5n Dec of Cushing, Ex.12.
[21] Management Services Agreement (Dec of Cushing, Ex. 35) The term of the agreement is 50 years with an automatic renewal for another 50 years. Bates No. CT02667. If the agreement is terminated for any reason prior to the term expiring, then CTGW is responsible to continue paying GLS based on the average monthly management fees for the 36 months prior to termination until the end of the term. Bates No. CT02668-69.
[22] Dkt. 3, at Exhibit A, Art. 5.
[23] Dkt. 3, at Exhibit A, Art. 11, 16; Dkt. 46 ¶ 18 & 54.
[24] Dkt. 1 ¶ 13; Dkt. 3 ¶ 11; Dkt. 46 ¶ 14; Limited Liability Company Agreement of CTGW, LLC (Exhibit 36, Dec of Cushing) at Bates Nos. CT04688, CT04724 ¶ 6.4, 6.5
[25] Kris Salmon, Chief Financial Officer for the Confederated Tribes of the Chehalis Reservation, Deposition ("Salmon dep.") 33:7-13, 138:20-24, Dec of Cushing, Ex. 8. Burnett dep. 183:16-21, Dec of Cushing, Ex. 1.



EDWARD G. HOLM
Thurston County Prosecuting Attorney
Civil Division
2424 Evergreen Park Dr. SW, Suite 102
Olympia, WA 98502
360/786-5574 FAX 360/709-3006

in excess $33 million (year ended December 31, 2008)[26] the Tribe received no net profit from CTGW.[27] In addition to being an investor, the Tribe has two other separate and distinct roles with respect to the Great Wolf Lodge. First, the Tribe is a sovereign government that may levy taxes and regulate activities that take place at the Great Wolf Lodge on the Land.[28] In its governmental function, collects a 3 percent sales tax and a 3 percent room tax.[29] Second, the Tribe is a landowner and leases the land to CTGW.[30]

In 2007, the Assessor valued the property at $68,812,500.[31] The taxable value was adjusted for the incomplete construction in 2007. The 2007 assessment was $10,115,462.[32] The Assessor assessed the Improvements at full completion and at their full value in 2008 for tax year 2009.[33] The property tax assessment on the Improvements includes levies for state and local schools, the county, Medic One, county roads, Timberland library, the Port of Olympia, fire district, cemetery district and public utility district.[34] Thurston County and each of the other taxing districts provide services that are funded by their property tax levies.[35]

## III. ANALYSIS

### A. Washington State Property Tax Law

All property in Washington is subject to taxation unless exempted by law.[36] In Washington, "personal property" includes "all improvements upon lands the fee of which is still vested in the

---

[26] CTGW, LLC Financial Statements as of and for the year Ended December 31, 2008 and Report of Independent Certified Public Accountants (Exhibit 30, Dec of Cushing). Bates No. CT02519 (see "Total revenues" row).
[27] Salmon dep. 138:20-24; Exhibit 30, Dec of Cushing, Bates No. CT02519 (see "Net los applicable to members" row).
[28] Salmon dep. 25:11-26:1-18,Dec of Cushing, Ex. 8.; Kalt dep. 125:25-126:14, Dec of Cushing, Ex. 10; Burnett dep. 183:16-21, Dec of Cushing, Ex 1.
[29] Confederated Tribes of the Chehalis Reservation Resolution No. 2007-85 (Exhibit 34, Dec of Cushing).
[30] *Id.* at 33:7-13, 138:9-10; Burnett dep. 21:19-23, 44:16-45:1, Dec of Cushing, Ex. 1.
[31] Dkt. 16 ¶ 6.
[32] *Id.* ¶ 9; Dkt. 46 ¶ 34.
[33] Dkt. 46 ¶ 35.
[34] Dkt. 16 ¶ 10.
[35] *See* "State and Local Interests are Strong and Establish Extensive Services Provided" *infra*.
[36] RCW 84.36.005.

EDWARD G. HOLM
Thurston County Prosecuting Attorney
Civil Division
2424 Evergreen Park Dr. SW, Suite 102
Olympia, WA 98502
360/786-5574 FAX 360/709-3006

United States."[37] Land owned by the United States and held in trust for the Tribe is exempt from property tax.[38] Here, the Improvements are defined as "personal property" because they are "improvements upon lands the fee of which is still vested in the United States."[39] Improvements on leased Indian trust land are personal property subject to personal property tax.[40] The lease of a nonIndian lessee leasing Indian trust property and that lessee's improvements fall within the definition of personal property in RCW 84.04.080.[41] The owner of the personal property is liable for the property taxes on that personal property.[42] Improvements that are the property of the lessee during the term of the lease are subject to personal property tax.[43] Here, CTGW's lease expressly states that CTGW is the owner of the Improvements.[44] Therefore, CTGW is liable for the property tax.

**B. <u>The Property Tax on CTGW, LLC, a Delaware LLC, Is Not Per Se Invalid</u>**

The Supreme Court has adopted a per se rule in the special area of state taxation of Indian tribes and tribal members.[45] If Congress has not instructed otherwise, a state's tax is unenforceable if the legal incidence of that tax falls on an Indian tribe or its members.[46] Absent express congressional authority, a tax is categorically barred if the legal incidence of the tax falls on an Indian person or entity and the taxable event occurs on the reservation.[47] Here, it is undisputed that CTGW owns the Improvements in fee during the Lease term.[48] Accordingly, the legal incidence of the property tax falls on CTGW.[49]

---

[37] RCW 84.04.080.
[38] WA Const. art. VII, § 1; RCW 84.36.010.
[39] RCW 84.04.080.
[40] *Chief Seattle Properties v. Kitsap County*, 86 Wn.2d 7, 21, 541 P.2d 699 (1975).
[41] *Id.*
[42] *Timber Traders, Inc. v. Johnston*, 87 Wn.2d 42, 49, 548 P.2d 1080 (1976).
[43] *Washington Mutual v. Dept. of Revenue*, 77 Wn. App. 669, 676, 893 P.2d 654 (1995).
[44] Dkt. 3 Exhibit A, Art. 11.
[45] *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 216 n.17, 107 S. Ct. 1083 (1987).
[46] *Oklahoma Tax Comm'n v. Chickasaw Nation*, 515 U.S. 450, 453, 115 S. Ct. 2214 (1995).
[47] *Id.* at 459.
[48] *Id.* at Art. 11, 16; Dkt. 46 ¶ 18.
[49] Plaintiffs admit that the legal incidence of the tax falls on CTGW but claim that CTGW is an Indian entity. Dkt. 46 ¶ 43.

EDWARD G. HOLM
Thurston County Prosecuting Attorney
Civil Division
2424 Evergreen Park Dr. SW, Suite 102
Olympia, WA 98502
360/786-5574 FAX 360/709-3006

CTGW is a limited liability company created under Delaware law.[50] CTGW, as a distinct legal entity that owns the Improvements, is liable for the property taxes, separate from the Tribe and GWR, its two members. In both Delaware and Washington, the law provides that limited liability companies are separate legal entities, distinct from their members:

> A limited liability company formed under this chapter shall be a separate legal entity, the existence of which as a separate legal entity shall continue until cancellation of the limited liability company's certificate of formation.[51]

"State chartered corporations, being fictional persons created by the states, should be treated as non-Indians even if owned by Indians."[52] CTGW is a fictional person created by the state. Although CTGW is a Delaware limited liability company and not a corporation, it is the nature of a state-chartered entity as separate and distinct from its members or shareholders that is the main issue. CTGW is a separate entity from its members, and thus it is a nonIndian entity, regardless of the Tribe's proportionate share in CTGW. The Plaintiffs' claim that the property tax is *per se* invalid should be dismissed.

### C. <u>Bracker Analysis Favors Property Taxation</u>

Even with the incidence of the tax on CTGW, the property tax may be preempted if the tax liability falls on a nontribal entity engaged in a transaction with tribes or tribal members on the reservation and the imposition of the tax fails to satisfy the *Bracker* interest-balancing test.[53]

---

[50] Plaintiffs, claim that CTGW is "uniquely Indian," Dkt. 2 at 13, stating that "[t]he federally-approved Lease prohibits CTGW from ever removing the Improvements, whose ownership reverts to the Tribe when the Lease terminates or expires." Dkt. 2 at 14. This statement disregards the License Agreement. According to the License Agreement, at the termination or expiration of the lease, unless the Tribe renews its licensing agreement, the Tribe has no right to the proprietary amenity Improvements at the Great Wolf Lodge. License Agreement at Exhibit 6; George Johnson, Plaintiffs' Expert, Deposition ("Johnson dep") 54:25-59:15, Dec of Cushing, Ex. 11.

[51] 6 Del. C. Section 18-201; RCW 25.15.070(2)(c). The statutory provisions of both Delaware and Washington in this regard are identical.

[52] F. Cohen, Handbook on Federal Indian Law (1982 ed.) at pages 355-56; *see Moline Properties, Inc. v. Comm'r of Internal Revenue*, 319 U.S. 436, 440, 63 S. Ct. 1132 (1943); *Myrick v. Devils' Lake Sioux Mfg. Corp.*, 718 F.Supp. 753, 755 (D.N.D. 1989); *Airvator, Inc. v. Turtle Mountain Mfg. Co.*, 329 N.W.2d 596, 602 N.D. (1983); Steven L. Pevar, in *The Rights of Indians and Tribes* 179 (3d Ed. 2002).

[53] *Wagnon v. Prairie Band Potawatomi* Nation, 546 U.S. 95, 102, 126 S. Ct. 676 (2005).

EDWARD G. HOLM
Thurston County Prosecuting Attorney
Civil Division
2424 Evergreen Park Dr. SW, Suite 102
Olympia, WA 98502
360/786-5574 FAX 360/709-3006

A *Bracker* analysis requires a "particularized inquiry into the nature of the state, federal, and tribal interests at stake, an inquiry designed to determine whether, in the specific context, the exercise of state authority would violate federal law."[54] The Supreme Court has identified factors to consider when determining if the state tax should be preempted.[55] Those factors include: "the degree of federal regulation involved, the respective governmental interests of the tribes and states (both regulatory and revenue raising), and the provision of tribal or state services to the party the state seeks to tax."[56]

> While the Tribes do have an interest in raising revenues for essential governmental programs, that interest is strongest when the revenues are derived from value generated on the reservation by activities involving the Tribes and when the taxpayer is the recipient of tribal services. The State also has a legitimate governmental interest in raising revenues, and that interest is likewise strongest when the tax is directed at off-reservation value and when the taxpayer is the recipient of state services.[57]

When conducting a *Bracker* analysis, courts view the tradition of Indian sovereignty as a "backdrop against which the applicable treaties and federal statutes must be read."[58]

The *Bracker* decision was based on a "comprehensive federal regulatory scheme."[59] The fact that the economic burden fell on the Tribe did not by itself mean that the tax was preempted.[60] As the Supreme Court stated in *Cotton Petroleum v. New Mexico*, a state may tax private parties with whom a tribe does business, even though the financial burden of the tax may fall on the tribe.[61]

Here, a nonIndian LLC owns the improvements for its commercial enterprise providing a hotel, conference center, and indoor water park. The guests and employees are predominantly non-Chehalis

---

[54] *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 145, 100 S. Ct. 2578 (1980).
[55] *Salt River Pima-Maricopa Indian Community v. Arizona*, 50 F.3d 734, 736 (9th Cir. 1995), *cert denied*, 516 U.S. 868 (1995).
[56] *Id.*
[57] *Washington v. Confederated Tribes of the Colville Indian Reservation*, 447 U.S. 134, 156-57, 100 S. Ct. 2069 (1980).
[58] *McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164, 172, 93 S. Ct. 1257 (1973).
[59] 448 U.S. at 151, fn. 15.
[60] *Id.*
[61] 490 U.S. 163, 175, 109 S. Ct. 1698 (1989).

EDWARD G. HOLM
Thurston County Prosecuting Attorney
Civil Division
2424 Evergreen Park Dr. SW, Suite 102
Olympia, WA 98502
360/786-5574 FAX 360/709-3006

Tribal members.[62] Even with the Chehalis Tribe's involvement in the joint venture, the business arrangement involves a nonIndian LLC providing services to primarily nonIndians. As the Ninth Circuit has previously found, this business arrangement tips the preemption balance toward state interests.[63]

**1. The Federal Interests Are Insufficient to Preempt the Property Tax.**

While the federal government has an interest in tribal economic self-sufficiency, that interest is not sufficient to preempt a state tax.[64] Federal interests are greatest when the government's regulation of a given sphere is "comprehensive and pervasive."[65] No such sphere exists in the present case because CTGW is not involved any activity in which the Congress intended to "occupy the field to the exclusion of state laws[,]"[66] such as timber,[67] mining,[68] or gaming.[69]

Neither the Improvements, nor the activities conducted at the Great Wolf Lodge, are subject to any specific federal regulations or laws.[70] No federal funds were involved with the development of the Improvements at the Great Wolf Lodge.[71] Aside from the Department of Interior initially taking the Land into trust and approving the lease of the tribal trust property, there is no apparent federal involvement in the operation of the Great Wolf Lodge. While the United States holds title to the trust property and is responsible for the lease of its land, the issue in the present case does not involve the lease or taxation of the Land. The property tax relates to the Improvements owned in fee by CTGW, a

---

[62] Kinzel dep. 50:22-51:3, Dec of Cushing, Ex. 3.
[63] *Barona Band of Mission Indians v. Yee*, 528 F.3d 1184, 1191 (9th Cir. 2008) (citing *Salt River Pima-Maricopa Indian Cmty.*, 50 F.3d at 737)).
[64] *Salt River Pima-Maricopa Indian Cmty*, 50 F.3d at 739.
[65] *Barona*, 528 F.3d at 1192 (quoting *Ramah Navajo School Bd., Inc. v. Bureau of Revenue of New Mexico*, 458 U.S. 832, 839, 102 S. Ct. 3394 (1982)).
[66] *Rice v. Rehner*, 463 U.S. 713, 735, 103 S. Ct. 3291 (1983)
[67] *Bracker*, 448 U.S. at 145.
[68] *Cotton Petroleum*, 490 U.S. 163; *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 102 S. Ct. 894 (1982)
[69] Through the Indian Gaming Regulatory Act (IGRA), 25 U.S.C.S. § 2701 et seq., Congress comprehensively regulates Indian gaming.
[70] Joseph Kalt, Plaintiffs' Expert, Deposition ("Kalt dep.") 208:13-15, Dec of Cushing, Ex. 10.
[71] Burnett dep. 31:18-23, Dec of Cushing, Ex. 1 ("[Y]ou have to prove to the BIA that you could not obtain commercial financing in any other way and that that loan guarantee then becomes an enhancement for the lender to go ahead and make the loan. And clearly the lenders were willing to make it without that loan guarantee.")

EDWARD G. HOLM
Thurston County Prosecuting Attorney
Civil Division
2424 Evergreen Park Dr. SW, Suite 102
Olympia, WA 98502
360/786-5574 FAX 360/709-3006

Delaware limited liability company, and not the Tribe.[72]

**2. Tribal Interests Are Insufficient to Preempt the Property Tax.**

As referenced in *Colville* above, tribal interests are strong when "revenues are derived from value generated on the reservation by activities involving the Tribes and when the taxpayer is the recipient of tribal services."[73] The Tribe is involved in CTGW as a member of the limited liability company. CTGW receives some tribal government services through the Tribe's jurisdiction at the Great Wolf Lodge through zoning regulations, building permitting and inspecting, and limited law enforcement.[74] The services that the Tribe provides, however, are not comprehensive. The Tribe does not provide the myriad of services and infrastructure required for a large commercial operation such as the Great Wolf Lodge. The Tribe does not provide the roads, general law enforcement, emergency services,[75] public health,[76] and schools,[77] needed to the serve the thousands of guests and employees who are drawn to the Great Wolf Lodge.

In performing a *Bracker* analysis, it is important to delineate the Tribe's three distinct roles with respect to the Land, CTGW, and the Great Wolf Lodge and their relevance to the balancing test. The Tribe's three roles are as (1) a government with jurisdiction over the trust property, (2) a landowner of the trust property, and (3) a member of the joint venture CTGW.

**a. The Tribe's Role as a Government Is Not Affected By the Property Tax**

Generally, a tribe has an interest in funding essential governmental services and Defendants do not dispute that general interest.[78] However, the property tax does not interfere with the Tribe's ability,

---

[72] Dkt. 3, at Exhibit A, Art. 11.
[73] 447 U.S. at 156-57.
[74] Burnett dep. 158:24-159:13, Dec of Cushing, Ex. 1.
[75] 30(b)(6) Confederated Tribes of the Chehalis Reservation Deposition ("30(b)(6) Tribe dep") 13:5-13 (roadways, sewer, water, power, law enforcement, emergency services), Dec of Cushing, Ex. 2.
[76] Burnett dep. 177:18-24, Dec of Cushing, Ex.1.
[77] *Id.* at 132:20-133:22.
[78] *Colville*, 447 U.S. at 156-57.

EDWARD G. HOLM
Thurston County Prosecuting Attorney
Civil Division
2424 Evergreen Park Dr. SW, Suite 102
Olympia, WA 98502
360/786-5574 FAX 360/709-3006

as a sovereign government, to fund its essential governmental services. In the present case, the Tribe is able to fund its essential governmental services through its taxes on activities at the Great Wolf Lodge.[79] The Tribe receives direct revenues from those taxes, which include a three percent sales tax and a three percent room tax.[80] In no way does the property tax levied against CTGW, a nonIndian entity, affect or interfere with the Tribe's rights as a sovereign government to generate revenue through its own taxes on the activities at the Great Wolf Lodge. In fact, the Tribe passed a resolution that applies "its Three Percent sales tax to all sales of goods, food and beverages, and hotel rooms occurring on tribal trust land, including the Tribe's trust land in Ground Mound."[81] Simply put, the Tribe would collect its taxes at the Great Wolf Lodge even if it was not a member of CTGW.

While the Tribe, as a sovereign government, exercises its jurisdiction and authority to tax, those taxes do not fund the many services that Thurston County and the other local taxing jurisdictions provide to CTGW. Those Thurston County and local jurisdiction services are funded through the property tax.[82] The fact that Thurston County and the Tribe have concurrent authority in no way preempts the state property taxation.[83]

**b. The Tribe's Role as a Landowner Is Not Affected By the Property Tax**

The property tax has no impact on the Tribe's interests as the owner and lessor of the Land to lease the Land to CTGW or to any other individual or entity. The property tax is assessed on the Improvements owned by CTGW, not the Land.

**c. The Tribal Interests Are Insufficient to Preempt the Property Tax When**

---

[79] *Kerr-McGee Corp. v. Navajo Tribe of Indians*, 471 U.S. 195, 200, 105 S. Ct. 1900 (1985) ("the tribe acts as a sovereign when it imposes a tax on economic activities within its jurisdiction").The Tribe's investment in CTGW, through fees or taxes, has not resulted in any new programs for tribal services. Salmon dep. 129:2-130:2, Dec of Cushing, Ex. 8; Kalt dep. 271:4-16, Dec of Cushing, Ex. 10. ("As I understand it, there's not earmarking of those revenues. It goes into the general fund of the Chehalis Tribe.")

[80] The room tax is equal to three percent of the room charge. Exhibit 36, Dec of Cushing, Bates no. CT04751.

[81] Exhibit 34, , Dec of Cushing.

[82] Dkt. 16, Exhibit A p. 5 of 5.

[83] *Cotton Petroleum*, 490 U.S. 189 (finding concurrent state and tribal taxing jurisdiction); *see Colville*, 447 U.S. at 156-57.

EDWARD G. HOLM
Thurston County Prosecuting Attorney
Civil Division
2424 Evergreen Park Dr. SW, Suite 102
Olympia, WA 98502
360/786-5574 FAX 360/709-3006

**Considering the Tribe's Role as a Member of CTGW.**

By considering the question of how the Chehalis Tribe will be impacted by imposition of the property tax, it becomes clear that the tribal interests are not strong. Even if the property tax may affect the overall profitability of the Tribe's operation, "[t]his alone, however, does not bar the imposition of a tax on non-Indians."[84] CTGW charges a seven percent hospitality fee, the proceeds of which are shall be retained by the Company in a separate account and used for Company purposes or distributed to the two members of CTGW according to their proportionate share.[85] The Tribe's revenues will not be reduced by the property tax because CTGW is using the hospitality fee proceeds for company purposes.[86]

While Tribes have an interest in their economic self-sufficiency, the Ninth Circuit gave that interest "minimal weight in the context of a $75 million casino expansion…"[87] The Ninth Circuit further stated that because "the legal incidence of the tax falls upon a non-Indian subcontractor, [it] f[ou]nd the tribal interests to be weak."[88] Similarly, here, the property tax relates to the Improvements which include a $100 million hotel, conference center, and indoor water park. Further, the legal incidence of the tax falls upon CTGW, a nonIndian entity. As in *Barona*, the court should assign minimal weight to the tribal interests involving the multimillion dollar Great Wolf Lodge.

Here, GWR, through GLS, receives a Base Management Fee (3 percent of gross revenue),[89] an

---

[84] *Barona*, 528 F.3d at 1191; *see Salt River Pima-Maricopa Indian Cmty.*, 50 F.3d at 737 ("the Ninth Circuit and the Supreme Court have repeatedly held that 'reduction of tribal revenues does not invalidate a state tax.'"); *Squaxin Island Tribe v. Washington*, 781 F.2d 715, 720 (9th Cir. 1986) ("a state tax or regulation is not invalid merely because it erodes a tribe's revenues, even if the tax substantially impairs the tribal government's ability to sustain itself and its programs").

[85] Exhibit 36, Bates no. CT04751, Dec of Cushing. The hospitality fee is equal to seven percent of the room charge.

[86] Burnett dep., 64:12-25, 65:1-14, , Dec of Cushing, Ex. 1 ("basically try to use that [hospitality fee] to drive more business to our property")

[87] *Barona*, 458 F.3d at 1191-92 *citing Cabazon Band of Mission Indians*, 480 U.S. at 218 n.20 (1987).

[88] *Id.*

[89] Management Services Agreement (Exhibit 35, Dec of Cushing), Bates no. CT02695; Total Management Fees as of September 30, 2009 are $1,705,384 to GWR. CTGW Fees – Paid and Unpaid (Exhibit 37, Dec of Cushing) Bates no. CT04549.

EDWARD G. HOLM
Thurston County Prosecuting Attorney
Civil Division
2424 Evergreen Park Dr. SW, Suite 102
Olympia, WA 98502
360/786-5574 FAX 360/709-3006

Incentive Management Fee (profit-based fee no larger than 5 percent),[90] a License Fee (4 percent of gross revenue),[91] a Brand Marketing Fee (1 percent of room revenue),[92] and a Central Reservation Fee (2 percent of room revenue).[93] During construction of the Great Wolf Lodge, GWR and the Tribe also received a 2 percent Development Fee (split evenly between GWR and the Tribe),[94] and a 2 percent Construction Management Fee (split evenly between GWR and the Tribe).[95] The fees that are ongoing and currently in effect amount to 9 percent of Great Wolf Lodge's gross revenue,[96] and are treated as expenses by CTGW.[97] The property tax has no impact on the Tribe's ability to collect the fees it is owed under the various agreements noted above (which has amounted to $7,306,177 for GWR and $2,591,882 for the Tribe as of September 30, 2009).[98] The property tax is, essentially, another business expense of CTGW that has no impact whatsoever on the amount of revenues that GWR or the Tribe receives from collecting on their fees. As such, the tribal interest, for the sake of a *Bracker* analysis, is weak.

In concert with the general tribal interest in raising revenue for governmental services, the Tribe has an interest in general economic development of the Chehalis Tribal property, which

---

[90] Exhibit 35, Dec of Cushing, Bates no. CT02673, CT02695; defined by Kris Salmon as follows: "That is the profit-based fee that is applied to the certain - it is a fairly complex calculation, but basically it applies to net operating income and 25 percent of net operating income. And it is a fee that will be no larger than five percent of gross revenue, if I remember correctly. We did the calculation for that for 2008 and there was no fee." Salmon dep. 89:6-14, Dec of Cushing Ex 8.

[91] Great Wolf Lodge License Agreement (Exhibit 38), Bates no. CT00611; Total License Fees as of September 30, 2009 are $2,311,958 to GWR. Exhibit 37, Dec of Cushing, Bates no. CT04549.

[92] Exhibit 38, Dec of Cushing, Bates no. CT00622 (Which, according to James Calder, has not been charged. Calder dep. 82:7-9).

[93] Exhibit 38, Dec of Cushing, Bates no. CT00664; Total Central Reservation Fees as of September 30, 2009 are $696,953 to GWR. Exhibit 37, Dec of Cushing, Bates no. CT04549.

[94] Exhibit 36, Dec of Cushing, Bates no. CT04702; Total Development Fees as of September 30, 2009 are $1,470,000 to GWR and $1,470,000 to the Tribe. Exhibit 37, Dec of Cushing, Bates no. CT04549.

[95] Exhibit 36, Dec of Cushing, Bates no. CT04703; Total Construction Fees as of September 30, 2009 are $1,121,882 to GWR and $1,121,882 to the Tribe. Exhibit 37, Dec of Cushing, Bates no. CT04549.

[96] Exhibit 35, Dec of Cushing, Bates no. CT02695; Total Management Fees as of September 30, 2009 are $1,705,384 to GWR. Exhibit 37, Dec of Cushing, Bates no. CT04549; Exhibit 38, Bates no. CT00611; Total License Fees as of September 30, 2009 are $2,311,958 to GWR. Exhibit 37, Dec of Cushing, Bates no. CT04549; Exhibit 38, Dec of Cushing, Bates no. CT00664; Total Central Reservation Fees as of September 30, 2009 are $696,953 to GWR. Exhibit 37, Dec of Cushing, Bates no. CT04549.

[97] Salmon dep. 92:9-93:4, Dec of Cushing Ex 8.

[98] Exhibit 37, Bates no. CT04549, Dec of Cushing.

EDWARD G. HOLM
Thurston County Prosecuting Attorney
Civil Division
2424 Evergreen Park Dr. SW, Suite 102
Olympia, WA 98502
360/786-5574 FAX 360/709-3006

potentially includes developing a tax base, jobs, and prospective development. Again, the property tax does nothing to impede those tribal interests from being attained. The property tax is not a tax on the Tribe, but rather on the Improvements owned by CTGW and, as described above, the tax has no affect on the Tribe's right as a sovereign government to tax as it is currently doing. Further, the property tax has no affect on job development as the Great Wolf Lodge currently employs over 500 employees and both the Tribe and GWR have expressed a desire to employ more tribal members through regular hiring practices and an internship program.[99] While the Tribe cites the "substantial" employment that the Great Wolf provides to the Tribe,[100] that general statement does not reflect the reality of the employment situation at the Great Wolf Lodge. The number of tribal members who have been employees at the Great Wolf Lodge has fluctuated over time. At one time, the Great Wolf Lodge reportedly employed four of approximately 560 employees who are either tribal members or are related to a tribal member,[101] (a figure that represents only 0.7 percent of the work force at the Great Wolf Lodge). At another point in time, the number of Tribal members employed at the Great Wolf Lodge was eight, (a figure that represents only 1.6 percent of the work force at the Great Wolf Lodge).[102] These employment figures do not, in any way, represent a "substantial" tribal employment at the Great Wolf Lodge. The vast majority of employees hired by the Great Wolf Lodge are not tribal members[103] and therefore not entitled to the services the Tribe provides exclusively for its members. Further, GLS makes the hiring decisions[104] and while there is a hiring preference for Tribal members, there is no

---

[99] Burnett dep. 37:7-25, 174:1-23, Dec of Cushing Ex 1; Kinzel dep., 68:14-70:8, Dec of Cushing Ex 3.
[100] Dkt. 3, Burnett Declaration ¶ 19
[101] Exhibit 33, Dec of Cushing.
[102] Burnett dep., 37:7-23, Dec of Cushing Ex 1; Exhibit 29, Dec of Cushing; Kinzel testified that he estimates between 20-30 tribal members have been hired and have since left the Great Wolf Lodge. Kinzel dep. 68:14-21, Dec of Cushing, Ex 3.
[103] Exhibit 29, Dec of Cushing.
[104] Exhibit 35, Dec of Cushing, Bates no. CT02661-CT02662.

EDWARD G. HOLM
Thurston County Prosecuting Attorney
Civil Division
2424 Evergreen Park Dr. SW, Suite 102
Olympia, WA 98502
360/786-5574 FAX 360/709-3006

mandate, quota, or written hiring preferences exist.[105]

As to prospective development, the property tax does not impede that endeavor. In fact, the Tribe and GWR are engaging in discussions about future joint development for some of the Land that is covered under the Lease.[106] The property tax affects none of the above tribal interests. Therefore, those tribal interests, for the sake of a *Bracker* analysis, are insufficient to preempt the property tax.

**d. The Tribe Lacks Control of CTGW.**

The Tribe does not exercise a controlling interest in CTGW or the Great Wolf Lodge and that lack of control illustrates the weakness of the Tribe's interests. CTGW's audited financial statements are compliant with Generally Accepted Accounting Principles ("GAAP") and that presentation does not report the Tribe's non-cash contributions to CTGW,[107] without which, the Tribe does not have a majority interest.

The non-cash contributions include the sovereign benefits, defined by CTGW as taxes,[108] and the land (together valued at $13,640,000).[109] In a GAAP presentation, without the value of the preempted taxes ("sovereign benefits") and the leased land, the resulting percentage split between the members of CTGW of total equity (common equity and preferred equity[110]) is: GWR at 69 percent and

---

[105] Burnett dep. 83:8-18, 174:1-15, Dec of Cushing Ex 1 (hiring preference for members of the Tribe); Kinzel dep. 69:13-70:8, Dec of Cushing Ex 3 (hiring preference for members of the Tribe). In fact, the general manager in charge of personnel was not even aware of the Tribe's preference regulations. Kinzel dep. 69:13-16, Dec of Cushing Ex 3.
[106] Burnett dep. 100:24-101:23, Dec of Cushing Ex 1.
[107] "GAAP will not include the noncash positions of fair market value of land and the sovereign benefits." Salmon dep. 50:21-22, Dec of Cushing Ex 8.
[108] Salmon dep. 54:12-55:3, Dec of Cushing Ex 8; Ms. Salmon stated, "As it pertains to the project, we use the terminology sovereign benefits to explain the - or to account for the sales tax and business and occupation tax that would not be paid by the businesses that were working on the construction of the project and therefore not charged to the project and therefore not incurred by - by the project and accrued into project costs." Salmon dep. 54:22-55:3, Dec of Cushing Ex 8; Exhibit 30, Dec of Cushing, Bates no. CT02526.
[109] CTGW, LLC Statement of Members' Capital (Exhibit 40, Dec of Cushing), Bates no. CT04167 (adding the non-cash contributions of sovereign benefits, valued at $10,000,000 and the land contribution, valued at $3,640,000).
[110] Exhibit 40, Dec of Cushing, Bates no. CT04164 is split into two columns, one marked "Common" and one marked "Preferred," these two columns represent the equity positions of the two members of CTGW as evidenced by the footer on the page labeled "CTGW_GAAP_equityposition." The pertinent row is titled: "Balance, December 31, 2008"; Exhibit 30, Dec of Cushing, Bates no. CT02520, contains two large columns titled "Member's Capital" and "Preferred Capital

EDWARD G. HOLM
Thurston County Prosecuting Attorney
Civil Division
2424 Evergreen Park Dr. SW, Suite 102
Olympia, WA 98502
360/786-5574 FAX 360/709-3006

the Tribe at 31 percent.[111]

Thus, the *majority* ownership claimed by the Tribe is a clear *minority* ownership where the *contribution* of a tax preemption is disregarded. The Tribe's representation that it is a 51 percent owner of CTGW is akin to the tribal manipulation of tax policy that gives the Tribe "an artificial competitive advantage over all business in a State"[112] that the Supreme Court has disfavored, by cloaking[113] its actual ownership interests using the possible preemption of taxes to inflate its ownership percentage in CTGW.

The Tribe's lack of control is further demonstrated by the arbitration clause in its agreements with GWR. If the Tribe's 51 percent proportionate share truly gave it a controlling interest, then no arbitration clause would be required.[114] In the LLC Agreement, GWR is the "managing member" and may make decisions on behalf of CTGW.[115]

The LLC Agreement provides a process for the Tribe's involvement in approving the annual operating budget and capital budget and must be consulted on certain major actions,[116] but on each of these aspects of management and control the Tribe's "approval shall not be unreasonably withheld or delayed and shall in any event be deemed given if CT does not respond to the request for approval

---

Contributions" those two columns and the accompanying row, titled: "Balance, December 31, 2008" contain the same figures that appear in the Statement of Members Capital and are considered "common equity" and "preferred equity" of GWR and the Tribe.

[111] Exhibit 40, Dec of Cushing, Bates no. CT04164; Exhibit 30, Dec of Cushing, Bates no. CT02520. Using the Audited Financial Statements, one arrives at the above percentages by adding, (in the "Balance, December 31, 2008" row), the Tribe's "Members' Capital"($2,282, in thousands) and the Tribe's "Preferred Capital Contributions" ($8,000), for a total of $10,282. Then add the "Total" of "Members' Capital" ($17,579, on the same row) and the "Total" of "Preferred Capital Contributions"($16,000), for a total of $33,579. Divide $10,282 by $33,579, which equals .306 or 31 percent. GWR's total equity is calculated in the same manner. Its "Members' Capital" is $15,297 and its "Preferred Capital Contributions" is $8,000; the two added together is $23,297. The "Total" of "Members' Capital" is $17,579 and the "Total" of "Preferred Capital Contributions" is $16,000; the two added together is $33,579. Divide $23,297 by $33,579, which equals .693 or 69 percent.

[112] *Colville*, 447 U.S. at 155.

[113] *Barona*, 528 F.3d at 1190-91.

[114] Exhibit 36, Dec of Cushing, Bates no. CT04746; Exhibit 35, Dec of Cushing, Exhibit B, Bates no. CT02701- CT02703.

[115] Exhibit 36, Bates no. CT04704, Dec of Cushing.

[116] *Id.* at Bates no. CT04704, CT04710

EDWARD G. HOLM
Thurston County Prosecuting Attorney
Civil Division
2424 Evergreen Park Dr. SW, Suite 102
Olympia, WA 98502
360/786-5574 FAX 360/709-3006

within 15 business days after the making of such request."[117] Also, the Management Services Agreement states that the Tribe has no input on the operation of the Great Wolf Lodge: "Owner will not interfere or involve itself in any way in the day-to-day operation of the lodge."[118] The lack of authority to make decisions further establishes the Tribe's lack of control of CTGW.

### 3. State and Local Interests are Strong and Establish Extensive Services Provided.

In the balancing of interests, the court must consider the state and local government interests and the provision of services to the party the state seeks to tax.[119] State taxing jurisdiction is not preempted if the state interests at stake "are sufficient to justify the assertion of state authority."[120] The cost to the state of the services it provides need not be proportional to the tax.[121]

In considering the state interests, the state has a strong interest in collecting property taxes to fund state and local government services.[122] Here, there are specific and legitimate state interests to justify the imposition of property tax. The state and local governments provide numerous services to the Great Wolf Lodge. The state has a legitimate interest in raising revenue, particularly when the taxpayer is the recipient of state services.[123]

With an estimated 400,000 customers per year drawn to the Great Wolf Lodge[124] and nearly 500 employees,[125] numerous local services are provided that benefit CTGW and the Great Wolf Lodge, and many services are provided directly to the Great Wolf Lodge. These services will only exist and be effective if supported by the county infrastructure, including county administration, courts, prosecution,

---

[117] *Id.* at ¶4.2(a), Bates no. CT04706.
[118] Exhibit 35, Dec of Cushing, Bates no. CT02663.
[119] *Salt River Pima-Maricopa Indian Cmty.*, 50 F.3d 734, 736 (9th Cir. 1995).
[120] *New Mexico v. Mesaclero Apache Tribe*, 462 U.S. 324, 334 (1983).
[121] *Cotton Petroleum*, 490 U.S. 163, 185 fn. 15. ("taxation is not premised on a strict *quid pro quo* relationship between the taxpayer and the tax collector.").
[122] *Chief Seattle*, 86 Wn.2d at 16.
[123] *Colville*, 447 U.S. at 157.
[124] Dkt. 15-3 (Futterman declaration, at Exhibit B).
[125] Kinzel dep. 50:22-51:3, Dec of Cushing Ex 3.

EDWARD G. HOLM
Thurston County Prosecuting Attorney
Civil Division
2424 Evergreen Park Dr. SW, Suite 102
Olympia, WA 98502
360/786-5574 FAX 360/709-3006

indigent defense, court clerk, jail and juvenile detention.[126]

Thurston County services are numerous. The services supported by the property tax that most directly benefit CTGW and the Great Wolf Lodge include:

- Medic One provides county-wide emergency response to medical emergencies that require advanced life support (ALS). Medic One also supports Fire District 1's function of providing Basic Life Support (BLS) services by providing training, supplies and equipment to the Fire District. From January 1, 2008 to September 15, 2009, there were 22 ALS calls to the Great Wolf Lodge.[127] The vast majority of Medic One funding is from the Medic One property tax levy.[128] Medic One also pays for a paramedic unit to be stationed at the Rochester Fire District fire house through the Medic One property tax levy.[129]

- The Thurston County Roads Department provides road maintenance on all county roads, and in particular, maintains Old Highway 99, the roadway from which the Great Wolf Lodge is accessed.[130]

- Thurston County Emergency Management provides disaster preparedness, mitigation and response, and coordination of intergovernmental responses in the event of an emergency.[131] During a major snow event in early 2009, Thurston County Emergency Management coordinated agency response to open up closed roads for medical and police response, to get people to work, to get utility crews to power outages.[132] Emergency Management provides snowplowing and ice control on the road in front of the Great Wolf Lodge, and is available to provide other services when required, in the event of an emergency.[133] Emergency Management is funded partly by the County Road property tax levy.[134]

- The Thurston County Board of Commissioners and its administration provides services to CTGW.[135] The Board provides a means for government to government communications, administration, and oversight.[136] These services are supported by the county's property tax.[137]

---

[126] Donald Krupp, Thurston County Manager, Deposition ("Krupp dep.") 88:24-89:15; 96:12-18, Dec of Cushing Ex 16.
[127] Steve Romines, Thurston County Medic One, Deposition ("Romines dep.") 28:2-17, Dec of Cushing Ex 13.
[128] Romines dep. 19:13-21, 21:1-4, Dec of Cushing Ex 13.
[129] Robert Scott, Fire Chief for Thurston County Fire District No. 1, Deposition ("Scott dep"). 59:13-60:22, 61:1-25, Dec of Cushing Ex 5.
[130] Payton dep. 14:24-15:18, 29:7-25, 30:1-2, Dec of Cushing Ex 14. Maintenance services include sweeping and brooming, sign installation and maintenance, pothole patching, sanding, plowing, weed-eating, pavement prep, hydroseeding, belt loading, inpecting pavement, bridges and drainage structure, anti-icing operations, striping and marking, ditch maintenance, vactor and jetter operations, chip seal, fog seal, overlay, traffic control, shoulder rock, pavement coring, and road kill pickup.
[131] Romines dep. 42:14-43:3, Dec of Cushing Ex 13; Lester Olson, Thurston County Public Works, Deposition ("Olson dep.") 62:4-10, 63:4-7, Dec of Cushing Ex 15.
[132] Olson dep. 65:1-16, 66:17-67:-7, 68:14-22, Dec of Cushing Ex 15.
[133] *Id.* at 77:12-19, 78:24-25, 29:1-4.
[134] Romines dep. 43:22-44:17, Dec of Cushing Ex 13.
[135] Krupp dep. 78:6-8, Dec of Cushing Ex 16.
[136] *Id.* at 83:18-84:15.

EDWARD G. HOLM
Thurston County Prosecuting Attorney
Civil Division
2424 Evergreen Park Dr. SW, Suite 102
Olympia, WA 98502
360/786-5574 FAX 360/709-3006

- The Sheriff provides law enforcement services that include deputy sheriffs, detectives, traditional policing, civilian staff, civil process, and other traditional law enforcement functions. In addition, the Sheriff provides a corrections division with programs for inmates and housing of inmates within the jail.[138] The County Sheriff responds to all 911 emergency calls for law enforcement response to the Great Wolf Lodge.[139] Since the Chehalis Tribal Police has jurisdiction only over Native American offenders who commit crimes, the Sheriff also responds to all non-emergency calls where the suspect is not Native American.[140] To date, the Sheriff has responded to approximately 30 times each year to the Great Wolf Lodge for calls other than traffic stops and DUIs.[141] The Sheriff's budget, including both the law enforcement and jail budgets, is funded by primarily by the county general fund (which comes from sales tax and property tax).[142]

- The County Coroner will respond to and provide death investigations in the event someone is deceased at the Great Wolf Lodge.[143] In most death circumstances where a call is made to 911, the response includes a BLS unit, law enforcement or, Medic One.[144]

- Two felony cases were prosecuted involving guests who stole property from the Great Wolf Lodge.[145] In both cases no contact orders were entered for the benefit of Great Wolf Lodge and the defendants were ordered to pay restitution to the Great Wolf Lodge.[146] Another felony referral was received involving allegations made by one Great Wolf Lodge employee against another regarding an incident at the Great Wolf Lodge.[147] In addition, charges were filed in three misdemeanor cases stemming from incidents involving guests at the Great Wolf Lodge.[148] As can be seen from the pleadings and other documents generated in these cases, each criminal prosecution involves services of the Court, the Clerk, the Prosecuting Attorney, the Office of Assigned Counsel, the Sheriff, and others.[149]

- The County's court system, superior and juvenile courts, and district court provide a venue for civil and criminal actions. District Court provides services to seek and enforce restitution in criminal cases and provides probation services.[150] Juvenile court services include the

---

137 *Id.*. at 81:5-9.
138 Daniel Kimball, Thurston County Sheriff, Deposition ("Kimball dep.") 30:18-25, 31:1-3, Dec of Cushing Ex 17.
139 *Id.* at 14:22-25.
140 *Id.* at 15:4-21.
141 *Id.* at 13:10-14:5.
142 *Id.* at 32:2-13.
143 Gary Warnock, Thurston County Coroner, Deposition ("Warnock dep.") 20:11-17, Dec of Cushing Ex 18.
144 *Id.* at 24:11-15.
145 Declaration of Wendy Ireland, ¶3(a)&(b).
146 *Id.*
147 *Id.* at ¶3(c).
148 *Id.* at ¶4.
149 *Id.* at ¶¶3 & 4, Exh. A-E.
150 Judy Lawrence, Thurston County District Court Administrator, Deposition ("Lawrence dep.") 24:8-24, Dec of Cushing Ex 19.

EDWARD G. HOLM
Thurston County Prosecuting Attorney
Civil Division
2424 Evergreen Park Dr. SW, Suite 102
Olympia, WA 98502
360/786-5574 FAX 360/709-3006

juvenile court for criminal matters, probations services and detention facilities.[151]

- The Superior Court Clerk keeps the official court files for superior court, attends all sessions of superior court, collects restitution and fines, fees, and judgments.[152] To date, there have been two felony cases prosecuted in superior court involving theft from the Great Wolf Lodge,[153] and both were ordered to pay restitution; the collection responsibilities will eventually come to the Clerk's office.[154]

- The Office of Assigned Counsel (OAC) provides indigent defense services to defendants in Thurston County courts. Two felony cases[155] and four misdemeanor cases[156] arising at the Great Wolf Lodge have been prosecuted through the Thurston County courts. While the OAC provides criminal defense services directly to the defendants it represents, which is constitutionally required.[157] Without this defense service, the cases could not be legally prosecuted, resulting in no entry of no contact orders to protect the Great Wolf Lodge, and no entry of restitution orders to compensate the Great Wolf Lodge for its losses.[158]

- Thurston County Public Health and Social Services Department provides services in the areas of environmental health, personal health, mental health, chemical dependency, developmental disability, housing programs, assistance to veterans, and workforce development.[159] In the event of a communicable disease outbreak, the Department gathers information from affected employees and guests of the Great Wolf Lodge and works with the Indian Health Service to address the source of disease transmission.[160] The Plaintiffs directly benefit from the Pacific Mountain Workforce Development Consortium, which provides employment referrals to the Great Wolf Lodge,[161] as well as mental health crisis staff who respond to individuals needing mental health crisis services.[162]

---

[151] Gary Carlyle, Thurston County Assistant Superior Court Administrator, Deposition ("Carlyle dep.") 16:14-17:7, Dec of Cushing Ex 20.
[152] Betty Gould, Thurston County Clerk, Deposition ("Gould dep.") 7:13-7:8, Dec of Cushing Ex 21. For every case filed in superior court that has a hearing, there's a process for opening the case file, scanning all documents filed, running docket calendars, pulling the case files, entering all data into the court databases. *Id.* at 26:6-16.
[153] *Id.* at 22:15-23:1.
[154] *Id.* at 23:7-21.
[155] *Id.* at 22:15-23:1.
[156] Sally Harrison, Thurston County Director of the Office of Assigned Counsel, Deposition 32:1-4, Dec of Cushing Ex 28(b).
[157] *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963) (Legal representation is fundamental to our criminal justice system.)
[158] Ireland declaration, ¶3(a)&(b).
[159] Sherri McDonald, Thurston County Director of Public Health and Social Services, Deposition ("McDonald dep.") 7:11-21, Dec of Cushing Ex 22.
[160] *Id.* at 35:12-23. Great Wolf Lodge may impact public health services because when large gatherings of people congregate, they may transmit disease to each other, and may transmit it outside or beyond the gathering spot. *Id.* at 38:16-22. For example, the Department received a communicable disease report involving someone who contracted salmonella after spending time at the Great Wolf Lodge. *Id.* at 47:1948:7. While this report was apparently isolated, it illustrates the use of the county health reporting system and the need for the services. This service directly benefits the Plaintiffs, because it allows them to receive notification of actual and potential health impacts that may affect their employees and guests.
[161] *Id.* at 39:13-16.
[162] *Id.* at 39:18-23.

EDWARD G. HOLM
Thurston County Prosecuting Attorney
Civil Division
2424 Evergreen Park Dr. SW, Suite 102
Olympia, WA 98502
360/786-5574 FAX 360/709-3006

- Thurston County's stormwater program protects and restores surface and ground water quality by providing education, planning, and operation and maintenance of stormwater facilities, and monitoring water pollutants.[163] The stormwater services are provided to all property within Thurston County and Grand Mound, including tribal trust property.[164] These services benefit the Great Wolf Lodge property by addressing water quality issues.[165]

- The Auditor's Office administers the county's elections program that allows Great Wolf Lodge employees to vote on federal, state, and local candidates and issues and elections.[166] The office also administers the document recording function to record legal documents.[167] The Plaintiffs have used these services to record their real estate documents.[168]

The other taxing districts also provide numerous services:

- The Rochester School District (RSD) provides education to Great Wolf Lodge employees and the children of employees who attend the Rochester schools, and also has 115 students who are Chehalis Tribal members.[169] CTGW benefits from RSD's goals of providing an educated workforce.[170] The major funding sources for the Rochester schools are the apportionment funds from the state property tax levy and the RSD property tax levy.[171]

- The state school property tax levy is designated to support common schools, with the funds placed in the state general fund to support the schools.[172] These funds support the education of Great Wolf Lodge's workforce and the employees' children, no matter which state-funded school they attend.

- Timberland Regional Library provides library services to residents and business within Thurston County.[173] The library services include the online databases available wherever the

---

163 James Bachmeier, Thurston County Department of Resource Stewardship, Deposition ("Bachmeier dep.") 14:18-15:18, Dec of Cushing Ex 4.
164 *Id.* at 17:7-18:6.
165 *Id.* at 24:11-21. In addition, CTGW and the Great Wolf Lodge benefit from the water quality programs that protect the Thurston County's Grand Mound water system from which it obtains its groundwater. Thurston County's stormwater programs provide a greater benefit to CTGW than most property owners because it is the principal end user of the water provided by the utility (85,000 gallons per day). Richard Blinn, Thurston County Public Works Department, Deposition ("Blinn dep.") 15:8-11, Dec of Cushing Ex 6).
166 Kenneth Raske, Thurston County Chief Deputy Auditor, Deposition ("Raske dep.") 13:5-10, Dec of Cushing Ex 23.
167 *Id.* at 45:25-46:5.
168 *Id.* at 12:22-13:1, 48:12-17, 53:4-54:1.
169 Kim Fry, Rochester School District Assistant Superintendent, Deposition ("Fry dep.") 13:16-18, 17:14-23, 20:18-20, Dec of Cushing Ex 24. In an informal count from August 2009, 51 students were reported to be children of employees at the Great Wolf Lodge and 28 students were currently or had previously been employed at the Great Wolf Lodge. Fry dep. 19:8-25, Dec of Cushing Ex 24.
170 *Id.* at 32:3-8.
171 *Id.* at 8:22-25, 11:1-10 (State apportionment provides approximately 75% of the school district general funds). The Rochester Schools District property tax levy provides approximately 18% of the District's general funds. *Id.* at 9:1-19, 10:23-25.
172 RCW 84.52.065, RCW 84.52.067.
173 Michael Crose, Timberland Regional Library Interim Executive Director, Deposition ("Crose dep.") 15:6-11, 25:7-19, Dec of Cushing Ex 25. The Library is in the process of arranging to put a kiosk on the Chehalis Tribe's tribal center.

EDWARD G. HOLM
Thurston County Prosecuting Attorney
Civil Division
2424 Evergreen Park Dr. SW, Suite 102
Olympia, WA 98502
360/786-5574 FAX 360/709-3006

Internet is available, including the Great Wolf Lodge.[174] The Library provides materials to businesses that are available to CTGW, provides information and analysis to Thurston Regional Planning (TRPC), and participates in planning through the Economic Development Council.[175] The Library District is funded at least 80% from its property tax levy.[176]

- The Port of Olympia is not known to provide direct services to CTGW, but the Port supports and promote tourism and recreation,[177] which benefit CTGW and the Great Wolf Lodge.[178]

- Thurston County Fire District 1 provides emergency fire and emergency medical services BLS to the Great Wolf Lodge.[179] In addition, the fire district provides education and training, works with employees at the Great Wolf Lodge to prepare for emergency response, tests fire hydrants serving the property, and provides site inspections to recommend improved fire safety.[180] The fire district provides emergency services, such as when individuals are trapped in an elevator or on a roof, in the event of an earthquake, a HazMat response, or assisting in evacuations in the event of flooding.[181] Over 80% of the Fire District budget is derived from its property tax levy.[182] Between March 27, 2008, when the Great Wolf Lodge opened, and December 31, 2008, the Fire District provided 62 fire and medical responses to the Great Wolf Lodge.[183] From January 1, 2009 to September 22, 2009 the Fire District provided 55 fire and medical responses to the Great Wolf Lodge.[184] The Fire District emergency responses have included medical care for employees located at the Great Wolf Lodge and exposure to a chemical leak.[185]

- Cemetery District 1 provides a public cemetery for use by the public, and its services are available to employees of CTGW and members of the Chehalis Tribe.[186] Members of the Tribe are provided burial plots free of charge.[187] At least 90% of the Cemetery District funds are from its property tax levy.[188]

---

Crose dep. 11:12-17, Dec of Cushing Ex 25. The kiosk would allow individuals at the Chehalis Tribal Center online access and access to information services, and would provide a place where library materials could be ordered and delivered by the library for library patrons to check out and return materials. *Id.* at 12:18-13:10, Dec of Cushing Ex 25.

[174] *Id.* at 18:16-20, 24:22-25:6.

[175] *Id.* at 28:3-23. The Chehalis Tribe is a member of TRPC. Sandra Romero, Thurston County Commissioner, Deposition ("Romero dep.") 19:16-18, Dec of Cushing Ex 9.

[176] Crose dep. 20:4-8, Dec of Cushing Ex 25.

[177] The Port provides funding to the Visitors & Convention Bureau to promote tourism in Thurston County. *Id.* at 15:1-9.

[178] Kevin Ferguson, Port of Olympia Finance Director, Deposition ("Ferguson dep.") 31:23-32:24, Dec of Cushing Ex 26. The Port operates a regional airport, marina, industrial complex, and marine terminal. *Id.* at 11:14-12:7, Dec of Cushing Ex 26.

[179] Scott 18:9-25, 28:10-13, Dec of Cushing Ex 5.

[180] *Id.* at 26:1-21.

[181] *Id.* at 51:6-55:5.

[182] *Id.* at 17:10-13.

[183] *Id.* at 40:18-21.

[184] *Id.* at 41:6-9.

[185] *Id.* at 65:1166:4.

[186] Larry Quarnstrom, Grand Mound Cemetery District Chairman of the Board, Deposition ("Quarnstrom dep.") 17:10-18.

[187] *Id.* at 19:6-10, 20:17-21, Dec of Cushing Ex 27.

[188] *Id.* at 16:8-11.

EDWARD G. HOLM
Thurston County Prosecuting Attorney
Civil Division
2424 Evergreen Park Dr. SW, Suite 102
Olympia, WA 98502
360/786-5574 FAX 360/709-3006

- Thurston County Public Utility District #1 (PUD) provides water system management and planning.[189] The PUD participates in activities for fisheries management and water resource management, and in intergovernmental activities for water supply, water quality, water resource and habitat protection and management.[190] The PUD brings its perspective on water planning to the TRPC that benefits the other members, including the Tribe.[191]

In *Bracker*, the Court determined the state's interest was nothing more than "a general desire to raise revenue" without providing any relevant service to the Tribe.[192] By contrast, here the state and local governments that will receive the property tax revenues provide numerous services to CTGW. Unlike *Bracker*, this **is** a case in which the state "seeks to assess taxes in return for governmental functions it performs for those on whom the taxes fall."[193] There is a clear nexus between the impacts of the Great Wolf Lodge on state and local services and the use of the property to fund those state services. "[T]he state interest strengthens where there is a nexus between the taxed activity and the government functions provided."[194]

This is not a case like *Bracker*, *Ramah*, or *Hoopa Valley* where state services were provided to tribal members but were unrelated to the activity being taxed.[195] Here, the state and local school district bear the burden of educating the Tribe's children and providing an educated workforce from which CTGW draws its employees.[196] Here, the roads to access the Great Wolf Lodge are built, maintained and policed by Thurston County.[197] Here, there is a direct connection between the tax revenues at issue,

---

[189] John Weidenfeller, Thurston Public Utility District No. 1 General Manager, Deposition ("Weidenfeller dep.") 7:14-15, Dec of Cushing Ex 28.
[190] *Id.* at 8:5-22, 10:24-11:2.
[191] *Id.* at 29:14-23, 31:4-18
[192] *Bracker*, 448 U.S. at 149-50.
[193] *Id.* at 150.
[194] *Barona*, 528 F.3d at 1193.
[195] *Hoopa Valley Tribe v. Nevins*, 881 F.2d 657, 660-661(9th Cir. 1989).
[196] *Cf. Ramah*, 458 U.S. at 843 (finding a lack of state interests in taxing on-reservation school construction where the state declined to take responsibility for the education of the Tribe's children). In *Ramah*, imposition of state tax on the firms hired by the tribe to construct a school on the reservation was precluded. *Id.* at 839-942
[197] *Cf. Bracker*, 448 U.S. at 150 where the roads were built, maintained and policed exclusively by the federal and tribal governments and their contractors.

EDWARD G. HOLM
Thurston County Prosecuting Attorney
Civil Division
2424 Evergreen Park Dr. SW, Suite 102
Olympia, WA 98502
360/786-5574 FAX 360/709-3006

and the services provided to CTGW and the Great Wolf Lodge.[198]

Unlike the scenarios in *Hoopa Valley Tribe, Ramah* and *Bracker*, the Great Wolf Lodge is located off reservation and attracts in excess of 400,000 visitors per year.[199] The Lodge is not in an isolated area, but in the Grand Mound community that requires governmental infrastructure to serve the needs of the community.[200] The services funded by the property tax levies at issue are a direct benefit to the plaintiffs and the CTGW property that is being taxed. As the operation of the Great Wolf Lodge directly impacts the services funded by the property tax without any corresponding compensation for the services provided the state and local interest in taxation is extremely strong.

The extensive services provided by state and local governments to CTGW, its guests and employees, in the absence of any federal regulatory scheme with regard to the hotel, conference center, and indoor water park, outweigh the federal and tribal interests. In light of the Tribe's ability to continue exercising its regulatory and concurrent taxing jurisdiction to collect its sales tax and room tax, the state's strong interest in collecting the property tax to pay for the governmental functions and services must prevail.

### D. Assessor's Performance of Her Statutory Assessment Duties Was Not *Ultra Vires*

Plaintiffs claim that that the Assessor's act of assessing the Improvements at less than their full value was *ultra vires*.[201] The Assessor has a statutory duty to value and assess property, including a determination as to the level of assessment.[202] Whether the valuation, or level of assessment, that the Assessor placed on the Improvements is correct is not at issue raised in this case.

---

[198] *Cf. Hoopa Valley Tribe*, 881 F.2d 657, 661 ("California admits there is no direct connection between revenues from the timber yield tax and the provision of services to tribal members or area residents generally.")
[199] Dkt. 15-3 (Futterman declaration, at Exhibit B).
[200] Krupp. dep. 89:7-8, Dec of Cushing Ex 16.
[201] Plaintiffs also allege that the Assessor disregarded CTGW as an entity and apportioned ownership interests between the members of CTGW. Dkt. 46, ¶55. Since the assessment was on CTGW's improvements, and not assessed against either the Chehalis Tribe or Great Wolf Resorts, both these allegations are without merit.
imposed a tax assessment on either Great Wolf Resorts or the Chehalis Tribe, these are
[202] RCW 84.40.040.

EDWARD G. HOLM
Thurston County Prosecuting Attorney
Civil Division
2424 Evergreen Park Dr. SW, Suite 102
Olympia, WA 98502
360/786-5574 FAX 360/709-3006

The tax is levied on CTGW.[203] The owner of the Improvements is CTGW.[204] The Assessor's act of determining an assessed value of the Improvements was entirely within her statutory duties.

As the Assessor explained in her November 13, 2007 letter to CTGW, the determination as to the level of assessment for 2007 took into account the nature of the ownership of the property. The Assessor stated, "An adjustment will be applied to the value of the improvements and equipment. . ."[205]

RCW 84.40.0301 requires the Court to presume the Assessor's determination of value is correct. Plaintiffs must establish by clear, cogent and convincing evidence that the 2007 assessment was incorrect.[206] The Plaintiffs have not challenged the level of assessment. The Assessor's act of assessing CTGW's property was clearly mandated by the Washington statutes and was not *ultra vires.*

## IV. CONCLUSION

Because the legal incidence of the property tax falls upon CTGW, the property tax is not per se preempted. Further, under *Bracker*, the federal and tribal interests taken together do not outweigh state and local interests. Summary judgment should be granted in favor of the Defendants.

DATED this 31st day of December 2009.

EDWARD G. HOLM
PROSECUTING ATTORNEY

/s/ Scott C. Cushing
JANE FUTTERMAN, WSBA #24319
SCOTT C. CUSHING, WSBA #38030
Deputy Prosecuting Attorneys
2424 Evergreen Park Dr SW, Ste. 102
Olympia, WA 98502
(360)786-5574, Fax (360)709-3006
futterj@co.thurston.wa.us
cushins@co.thurston.wa.us

EDWARD G. HOLM
PROSECUTING ATTORNEY

/s/ Scott C. Cushing, WSBA#38030 for
JAMES P. RICHMOND, WSBA #15865
Special Deputy Prosecuting Attorney
c/o 2424 Evergreen Park Dr SW, Ste. 102
Olympia, WA 98502
(360) 754-1581
jim@richmondlawgroup.com

*Attorneys for Thurston County Defendants*

---

[203] Dkt. 46, ¶ 43.

[204] Dkt. 46, ¶¶18, 54.

[205] Patricia Costello, Thurston County Assessor, Deposition ("Costello dep.") 161:12-25, Dec of Cushing Ex 28(a), November 13, 2007 letter from Assessor Patricia Costello to CTGW, LLC and Confederated Tribes of the Chehalis Reservation, p. 1.) (Exhibit 41); Costello dep. 100:21-101:12, Dec of Cushing Ex 28(a).

[206] RCW 84.40.0301

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 24

Cause No: C08-5562 BHS

Motion for Summary Judgment FINAL 12-31-09

EDWARD G. HOLM
Thurston County Prosecuting Attorney
Civil Division
2424 Evergreen Park Dr. SW, Suite 102
Olympia, WA 98502
360/786-5574 FAX 360/709-3006

I hereby certify that on the 31st day of December, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following attorneys for plaintiffs:

Harold Chesnin
Confederated Tribes of the
Chehalis Reservation
1810 43rd Avenue E., # 203
Seattle, WA 98112
pateus@aol.com

Gabriel S. Galanda
Anthony Broadman
Debora G. Juarez
Williams, Kastner & Gibbs, PLLC
601 Union Street, Suite 4100
Seattle, WA 98101
ggalanda@williamskastner.com
abraodman@williamskastner.com
djuarez@williamskastner.com

**Attorney for Board of Equalization**

David Klumpp
Chief Civil Deputy
2424 Evergreen Park Dr SW, Suite 102
Olympia, WA 98502
(360)786-5574
Fax (360)709-3006
klumppd@co.thurston.wa.us

Linda Olsen, Paralegal
to Attorneys for Thurston County, Thurston County Assessor and Thurston County Treasurer

EDWARD G. HOLM
Thurston County Prosecuting Attorney
Civil Division
2424 Evergreen Park Dr. SW, Suite 102
Olympia, WA 98502
360/786-5574 FAX 360/709-3006